## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

|  |  |
|---|---|
| NICHOLAS SMITH and DERIK GEORGE, on behalf of themselves and all others similarly situated, | |
| Plaintiffs, | |
| v. | Civil Action No. ___ |
| SUN COUNTRY, INC., THE BOARD OF TRUSTEES OF THE SUN COUNTRY, INC. 401(K) PROFIT SHARING PLAN, JOHN DOES AND JANE DOES 1-50. | **CLASS ACTION COMPLAINT** |
| Defendants. | **EXEMPT FROM FILING FEES UNDER 38 U.S.C. § 4323(h)(1)** |
| THE SUN COUNTRY, INC. 401(K) PROFIT SHARING PLAN | |
| Nominal Defendant | |

Plaintiffs Nicholas Smith and Derik George, on behalf of themselves and all others similarly situated, by and through their attorneys allege as follows:

### INTRODUCTION

1.     This is an action brought pursuant to the Uniformed Services Employment and Reemployment Rights Act ("USERRA"), 38 U.S.C. §§ 4301 *et seq*., and the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 *et seq*., on behalf of a class of current and former employees of Sun Country, Inc. who did not receive the pension contributions allocated to their individual accounts as mandated by USERRA and required by the terms of the Sun Country, Inc. 401(k) Profit Sharing Plan (the "Plan") for periods in which those employees took leave to serve in the uniformed services. Sun Country failed to make contributions for those periods of military service as required by USERRA and the fiduciaries of the Plan violated their

1

fiduciary duties by failing to collect the proper amount of contributions required under the terms of the Plan that were required to be made for those periods of military service.

2.     Both USERRA and the terms of the Plan, which incorporate the corresponding provisions of the Internal Revenue Code ("IRC"), mandated that participants in the Plan who performed qualified military service and were reemployed with Sun Country would receive pension contributions for those periods of qualified military service. Despite being informed by Plaintiffs and the Air Line Pilots Association (the union that represents Sun Country pilots) that employees returning from military duty were not receiving their pension contributions as required by USERRA, Sun Country remains non-compliant with its USERRA obligations.

3.     As the terms of the Plan also required payment by Sun Country of these pension contributions when servicemembers returned from military service, the Plan fiduciaries breached their fiduciary duties by failing to enforce the terms of the Plan and by operating the Plan contrary to its terms. Additionally, the Plan's fiduciaries failed to properly manage the assets of the Plan and hold all of the assets of the Plan in trust, including a "chose in action" to collect these pension contributions contractually-owed by Sun Country.

4.     As remedy for these violations, this action seeks a determination regarding the rights of Plaintiffs and the Class under USERRA, the payment of the pension contributions for military service in the Plan, recovery of the losses incurred by the Plan as a result of the breaches of fiduciary duty under ERISA and disgorgement of any profits by Sun Country for failing to make these contributions, and/or imposition of a surcharge against the breaching fiduciaries. Plaintiffs seek to have any monies recovered for the Plan be allocated to the Class members' respective Plan accounts, and that they be awarded attorneys fees, costs, and all other appropriate relief.

## JURISDICTION AND VENUE

**Subject Matter Jurisdiction**

5.     This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331, because this action arises under the laws of the United States, USERRA and ERISA. This Court has subject matter over the USERRA claim pursuant to 38 U.S.C. § 4323(b)(3), which provides the district courts of the United States with jurisdiction over any USERRA action brought against a private employer. This Court has subject matter jurisdiction over the ERISA claims pursuant to 29 U.S.C. § 1132(e)(1), which provides for jurisdiction of actions brought under Title I of ERISA in the district courts of the United States.

**Venue**

6.     Venue is proper in this District pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because (a) Defendant Sun Country may be found in this District, and in fact, is headquartered in this District, (b) the breaches of fiduciary duty alleged herein took place in this district, and (c) ERISA provides for nationwide service of process.

7.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events giving rise to the claims in this action occurred in this district.

8.     Venue is proper in this district under 38 U.S.C. § 4323(c)(2), as "the private employer of the person" who has filed this lawsuit, Sun Country, Inc. "maintains a place of business" in Minneapolis, Minnesota.

## THE PARTIES

**Plaintiffs**

9.      Plaintiff Nicholas Smith is and has been employed as a Sun Country pilot since 2019. Plaintiff Smith has taken leave from his employment at Sun Country to engage in qualified military service multiple times and returned from that leave to be re-employed at Sun Country. Plaintiff Smith is a participant in the Plan within the meaning of ERISA § 3(7), 29 U.S.C. § 1002(7). Plaintiff Smith is currently based out of the Sun Country hub at Minneapolis-Saint Paul International Airport in Minneapolis, Minnesota.

10.     Plaintiff Derik George is and has been employed as a Sun Country pilot since 2020. Plaintiff George has taken leave from his employment at Sun Country to engage in qualified military service multiple times and returned from that leave to be re-employed at Sun Country. Plaintiff George is a participant in the Plan within the meaning of ERISA § 3(7), 29 U.S.C. § 1002(7). Plaintiff George is currently based out of the Sun Country hub at Minneapolis-Saint Paul International Airport in Minneapolis, Minnesota.

**Defendants**

11.     Defendant Sun Country, Inc. ("Sun Country"), is a subsidiary of Sun Country Holdings, Inc.  According to the most recent 10-K of Sun Country Holdings, Sun Country is a certificated air carrier providing scheduled passenger service, air cargo service, charter air transportation and related services throughout North America and Central America. Services are provided to the general public, cargo customers, military branches, wholesale tour operators, schools, companies and other individual entities for air transportation to various U.S. and international destinations. Sun Country Holdings, Inc. exited bankruptcy in July 2011. Sun Country is an employer under USERRA § 4303(4)(A).  Sun Country is the Sponsor of the Plan

within the meaning of ERISA § 3(16)(B), 29 U.S.C. § 1002(16)(B) and is the Administrator of the Plan within the meaning of ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A).  As a result of its authority under the terms of the Plan, including as Plan Administrator, Sun Country is a fiduciary of the Plan within the meaning of ERISA § 3(21).

12.     Defendant Board of Trustees, according to Note 1 to the Financial Statements of the 2022 Form 5500, "oversees governance of the Plan." The Board of Trustees meets the definition of a person under ERISA § 3(9), 29 U.S.C. § 1002(9), because ERISA defines the term person broadly and because a committee of persons such as this Board meets the definition of an association or an unincorporated organization. Section 19.01 of the written instrument of the Plan allows the Plan Administrator "by written instrument" to "allocate and delegate its fiduciary responsibilities." Based on the description of its responsibilities in the Form 5500, the Board of Trustees is a fiduciary of the Plan within the meaning of ERISA § 3(21).

13.     Defendants John and Jane Does 1-50 are the members of the Board of Trustees whose identities and time of service are unknown to Plaintiffs at this time. Section 19.01 of the terms of the Plan allows the Plan Administrator "by written instrument" to "allocate and delegate its fiduciary responsibilities." Pursuant to ERISA § 104(b)(4), Plaintiff Smith requested copies of any instruments under which the Plan is established or operated, but no document allocating or delegating fiduciary responsibilities was provided in response. Regardless of whether the members of the Board of Trustees were properly appointed as fiduciaries under the terms of the Plan, as a result of their positions on the Board of Trustees, which "oversees governance of the Plan," each of the Board Defendants is and was a fiduciary of the Plan within the meaning of ERISA § 3(21).

14.     The Board of Trustees and its members are referred to as the "Board Defendants."

15.     Defendant Sun Country and the Board Defendants are collectively referred to as the fiduciaries or the "Fiduciary Defendants."

**Nominal Defendant**

16.     Defendant Sun Country, Inc. 401(k) Profit Sharing Plan ("the Plan") is an employee benefit plan within the meaning of ERISA § 3(2) sponsored by Sun Country, Inc. The Plan is a defined contribution plan within the meaning of ERISA § 3(34). The Plan is an employee pension benefit plan within the meaning of 38 U.S.C. § 4318(a)(1)(A). The Plan is also an employer within the meaning of USERRA § 4303(4)(C) for the purpose of the Plan's "obligation to provide [the pension] benefits described in section 4318." The written instrument of the Plan, within the meaning of ERISA § 402, 29 U.S.C. § 1102, that sets forth the terms of the Plan are the "Pre-Approved Defined Contribution Plan: Fidelity Basic Plan Document No. 17" and "Adoption Agreement No. 1." The Plan is named as a nominal defendant under Rule 19 to ensure that complete relief can be granted as to claims brought on behalf of the Plan. The Plan is administered in Minneapolis, Minnesota.

**Relevant Non-Party**

17.     Fidelity Management Trust Company ("Fidelity") is and has been at least since adoption of the current Plan, a trust company organized under the laws of the Commonwealth of Massachusetts with its headquarters and principal place of business in Boston, Massachusetts. Pursuant to the Trust Agreement of the Sun Country, Inc. 401(k) Profit Sharing Plan, Fidelity was appointed and served as Trustee of the Plan. According to Section 20.04 of the Trust Agreement, all of the powers that Fidelity has under the Trust Agreement, the Trustee exercises solely as a directed trustee in accordance with the written direction of Sun Country (except to the extent that an asset is subject to participant direction)

## <u>CLASS ACTION ALLEGATIONS</u>

18.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal

Rules of Civil Procedure on behalf of the following persons:

(a)     All current and former Sun Country, Inc. employees who are or were participants

in the Sun Country, Inc. 401(k) Profit Sharing Plan and:

(1)     who, after becoming a Sun Country, Inc. employee, completed a period of

qualified military service that ended on or after July 21, 2011;

(2)     who did not receive a pension contribution to the Plan for a period of

qualified military service that was either

(A)     if the employee's rate was reasonably certain, at the rate the
employee would have received but for the period of military
service, or

(B)     if the employee's rate is not reasonably certain, on the basis
of the employee's average rate of compensation during the 12-
month period immediately preceding the qualified military leave
(or, if shorter, the period of employment immediately preceding
the period of qualified military service), and;.

(b)     All beneficiaries of the participants described in (a).

19.     Excluded from the Class are the following persons: (a) former or current

employees who previously reached settlements with or judgments against Sun Country resolving

or releasing any claims arising during the Class Period under USERRA and/or ERISA related to

inadequate pension contributions for periods of military leave; and (b) any person who served as

a fiduciary of the Plan and their beneficiaries under the Plan and any member of the immediate

family of and any heirs, successors or assigns of any such person.

**Impracticability of Joinder**

20.     The class is so numerous that joinder of all members is impracticable. According to the most recent Form 5500 for the year ending December 31, 2022, the number of active participants in the Plan as of December 31, 2022 was 2,399. Upon information and belief, there are at least hundreds of current and former employees who are members of the Class. Additionally, Section 11.04 of the terms of the Plan provides that for any married participant, the participant's spouse is the default beneficiary and also allows participants to designate multiple beneficiaries.  Thus, there are at least several hundred members of the Class.

21.     Sun Country currently has more than 100 domestic and international destinations in the United States, Canada, Mexico and Central America including in Dallas/Fort Worth, Texas and Las Vegas, Nevada. Based on the foregoing, the members of the Class are geographically dispersed.

**Commonality**

22.     The central questions in this case concern whether the Class Members' rights under USERRA were violated by Sun Country, and whether the Fiduciary Defendants of the Plan breached their fiduciary duties by applying a policy or practice inconsistent with the terms of the Plan, by failing to ensure that the Plan received contributions included qualified military service and by failing to take any action to collect such contributions. As Sun Country uniformly failed make the contributions owed under USERRA and under the terms of the Plan for periods of military leave, these questions will produce common answers.

23.     Plaintiffs' claims raise subsidiary common questions that will also have common answers for the Class, including, but not limited to, the following:

(a)     Whether the Plan Document provided that all contributions to employees for periods of qualified military service be made consistent with the IRC § 414(u) and thereby USERRA, 38 U.S.C. § 4318;

(b)     Whether the policy that was implemented for collecting and paying pension contributions for periods of qualified military service was contrary to IRC § 414(u), USERRA, 38 U.S.C. § 4318, and/or the terms of the Plan;

(c)     Whether the Fiduciary Defendants breached their fiduciary duties by failing to follow the terms of Plan or adopting a policy that was inconsistent with the terms of the Plan or overseeing the assets of the Plan;

(d)     Whether the Fiduciary Defendants breached their fiduciary duties by failing to take any action, including as necessary to instruct Fidelity to institute a lawsuit to ensure that the correct contributions were made under the Plan;

(e)     Whether Sun Country breached its fiduciaries duties in appointing, monitoring and failing to remove Board of Trustees or Fidelity as fiduciaries of the Plan; and

(g)     What, if any, relief should be granted?

24.     As the relief owed in this case is based upon contributions for periods of qualified military service, any recovery will be paid into the Plan, and the ERISA claims are made on behalf of the Plan, all issues regarding relief are common. Even if variability in the ultimate allocation of recovery into employees' individual accounts is considered, the unifying issue in this case is the legality of Defendants' uniform policy or practice not to make Plan contributions during an employee's qualified military service.  As the Fiduciary Defendants acted in a systematic manner with respect to the Plan and the Class, all members of the Class suffered the

same type of injury based on a single policy and resolving the claims of the Class will be based on common legal and factual questions.

**<u>Typicality</u>**

25.     Plaintiffs' claims are typical of the other members of the proposed Class. Plaintiffs challenge a uniform failure by Sun County to make pension contributions for periods of qualified military service and breaches of fiduciary duty owed to the Plan.

26.     Defendants have no unique defenses against the Plaintiffs that would interfere with Plaintiffs' representation of the Class.

**<u>Adequacy</u>**

27.     Plaintiffs will fairly and adequately protect the interests of other members of the Class. Plaintiffs are aware of no conflict with any other member of the Class. Plaintiffs understand their obligations as class representatives, have already undertaken steps to fulfill them, and are prepared to continue to fulfill their duties as class representatives.

28.     Plaintiffs' counsel are experienced in federal court class-action litigation, including pension and civil rights litigation, and have considerable experience and expertise in the areas of both ERISA and USERRA.

**<u>Rule 23(b)(1)</u>**

29.     This action is properly maintainable as a class action under Rule 23(b)(1) of the Federal Rules of Civil Procedure, because the central questions in this litigation are whether Sun Country violated USERRA and whether the Fiduciary Defendants breached their fiduciary duties in connection with the contributions owed to the Plan based on periods of qualified military service.

30.     Administration of a pension plan requires that all similarly situated participants be treated consistently. As a practical matter, resolution of whether Sun Country's failed to make pension contributions based on military service as required under USERA and the terms of the Plan would be dispositive of that issue for other members of the Class. Likewise, conflicting interpretations as to the manner by which the amount should have been calculated and contributed to the Plan and to the individual accounts of similarly situated participants would create the risk of establishing inconsistent standards of conduct for the Plan, its administrator, and any subsequently-appointed independent fiduciary.

**Rule 23(b)(2)**

31.     This action is also properly maintainable as a class action under Rule 23(b)(2) of the Federal Rules of Civil Procedure.

32.     Defendant Sun Country is alleged to have violated USERRA in a manner as to all members of the Class. The Fiduciary Defendants are alleged to have breached their fiduciary duties in a manner that applied to all members of the Class either by failing to follow the terms of the Plan as to all members of the Class, by failing to properly manage the assets of the Plan or by failing to properly remedy the breaches. As such, Defendants have acted or refused to act on grounds that apply generally to the Class. As a result, final declaratory relief is appropriate respecting the Class as a whole.

33.     The relief sought consists primarily of: (a) a determination that (i) Sun Country violated USERRA, and (ii) the Fiduciary Defendants breached their fiduciary duties in failing to follow the terms of the Plan, and failing to take actions to ensure that correct contributions were made to the Plan, (b) an order requiring Sun Country pay the contributions owed under USERRA and the Plan, (c) an order requiring the Fiduciary Defendants to restore the losses to the Plan as a

result of their breaches of fiduciary duty; and (d) an order that the restored losses be allocated into the accounts of the members of the Class.

34.     The monetary relief that Plaintiffs seek either flows from and/or is incidental to the declaratory relief sought, as it flows directly from the ordering of such declaratory relief and can be calculated in a simple, objective, and mechanical manner. Specifically, the amount owed to the Plan and the Class can be calculated by (1) comparing, for each full month and/or partial month of qualified military service, (a) the amount of pension contributions that should have been made under USERRA and the terms of the Plan Document, with (b) the amount of pension contributions that the employee received in his or her Plain account for that full month and/or partial month of qualified military service, and (2) adding an amount to compensate the Plan for lost earnings on those unmade contributions.

**Rule 23(b)(3)**

35.     This action is also properly maintainable as a class action under Rule 23(b)(3) of the Federal Rules of Civil Procedure.

36.     The questions of law and fact common to the members of the Class predominate over questions affecting only individual members and a class action is superior to other available methods for the fair and efficient resolution of this controversy. By resolving the common issues described above in a single class proceeding, each member of the proposed class will receive a determination of whether Sun Country violated USERRA and whether the Fiduciary Defendants breached their fiduciary duties and the appropriate remedies under USERRA and ERISA.

37.     The following factors set forth in Rule 23(b)(3) also favor certification of this case as a class action:

(a)     The members of the Class have an interest in a unitary adjudication of the issues presented in this action for the reasons that this case should be certified under Rule 23(b)(1).

(b)     No other litigation concerning this controversy has been filed by any other members of the Class.

(c)     This District is a desirable location for concentrating the litigation for reasons that include (but are not limited to) the following: (i) Sun Country is headquartered in this District, (ii) the Plan is administered in this District, (iii) as the majority of Sun Country employees are located in this District and (iv) this District is convenient to most Class Members.

(d)     There are no difficulties in managing this action as a class action.

## FACTUAL ALLEGATIONS

### Background on the Sun Country, Inc. 401(k) Profit Sharing Plan

38.     ERISA § 402(a)(1) provides that every employee benefit plan shall be established and maintained pursuant to a written instrument (colloquially known as the "Plan Document"). The current written instrument of the Sun Country, Inc. 401(k) Profit Sharing Plan Document that sets forth the terms of the Plan are the "Pre-Approved Defined Contribution Plan: Fidelity Basic Plan Document No. 17" and "Adoption Agreement No. 1." Based on the Adoption Agreement, these have been the Plan Documents at least since April 19, 2022.

### *Participant Eligibility Under the Plan*

39.     Based on Section 1.04 of the Adoption Agreement and Note 1 of the 2022 Form 5500 Annual Report (which is the most recent one filed with the Department of Labor),

employees of Sun Country who are age 18 or older are eligible to participate in the Plan and are eligible to enter the Plan on the first day of each month following meeting eligibility conditions.

### Contributions Under the Plan

40.     As the Plan is a defined contribution plan within the meaning of ERISA § 3(34), 29 U.S.C. § 1002(34), the Plan has an individual account for each participant. Benefits under the Plan are based solely upon the amount contributed to the participant's account, along with any income, expenses, gains and losses, or forfeitures of accounts of other participants which may be allocated to such participant's account.  As a result, Sun Country's failure to make the proper contributions for periods of military service means that these servicemembers have been harmed by not only the amount of lost contributions, but  also the amount of lost earnings on those contributions had they been timely made.

41.     According to the 2022 Form 5500, for the year ended December 31, 2022, Sun Country matched 100% of non-pilot participants' contributions up to 4%.  Sun Country is also required to make nonelective contributions to each pilot participant account. Effective January 1, 2022, the pilots' nonelective contribution was increased to 13% for 2022, 14% for 2023 and 15% for 2024.

### Fiduciaries Under the Plan Document & Their Obligations

42.     **Plan Administrator.** Section 2.01(c) of the Plan Document defines the Administrator of the Plan as the Employer adopting the Plan as listed in Subsection 1.02(a) of the Adoption Agreement or another person or entity designated by the Employer in Subsection 1.01(c) of the Adoption Agreement.  Subsection 1.02(a) of the Adoption Agreement identifies Defendant Sun Country as the Employer and Subsection 1.01(c) of the Adoption Agreement

does not identify any other person or entity as the Administrator.  As such, Defendant Sun Country is the Administrator of this Plan.

43. **_Trustee._**  Section 2.01(eee) of the Plan Document defines the Trustee as the individual(s) or entity designated under the Trust Agreement or its permitted successor or assigns and includes any delegate of the Trustee provided in the Trust Agreement.

44. **_Trust Agreement._**  Section 2.01(ddd) of the Plan Document defines the Trust Agreement as the separate agreement between the Employer and Trustee under which the assets of the Plan are held, administered and managed.

45. **_Conflicts between the Plan and the Trust._**  Section 2.01(ccc) of the Plan Document provides that the provisions of the Plan Document override any conflicting provisions contained in the Trust or other documents used with the Plan.

46. **_Duties by All Fiduciaries._**  Section 18.12 of the Plan Document provides that the "Trustee, the Employer and any other fiduciary shall discharge their duties under the Plan with the requirements of ERISA solely in the interests of Participants and their Beneficiaries and with the care, skill, prudence and diligence under the applicable circumstances that a prudent man acting in a like capacity and familiar with such matters would use in conducting an enterprise of like character with like aims."

47. **_Plan Administrator's Powers & Duties_**. Section 19.04 of the Plan Document identifies the "Administrator" as a 'named fiduciary' for purposes of ERISA Section 402(a)(1) and has the powers and responsibilities with respect to the management and operation of the Plan described herein."  Section 19.01 of the Plan Document provides that the "Administrator has the full power and the full responsibility to administer the Plan in all of its details" subject to "the requirements of ERISA." Section 19.01 of the Plan Document also permitted the Administrator

"by written instrument" to "allocate or delegate its fiduciary responsibilities" but provided such allocation and delegation was subject to ERISA § 405 (that includes ERISA § 405(c)(1), which sets forth the circumstances under which the delegator remains liable for breaches by the delegate).

### *Fiduciaries' Obligations Under the Trust Agreement*

48.    ***Directed Trustee.***  Section 20.04 of the Trust Agreement provides that all of the powers held by the Trustee may only be exercised "solely as a directed trustee in according with the written direction of the Employer [i.e. Sun Country]" except to the extent that a Plan asset is subject to direction by a participant. In other words, the Trust Agreement imposes a duty upon Sun Country to issue direction to the Trustee.  Pursuant to ERISA § 403(a)(1), 29 U.S.C. § 1103(a)(1), Fidelity's duties are to follow the "proper directions of" the non-trustee fiduciary (i.e. Sun Country) "which are made in accordance with the terms of the plan and which are not contrary to [ERISA]."

49.    ***Assets Held in Trust by Fidelity.***  As explained in Section I.S of the Summary Plan Description, the duties of Fidelity as trustee in the Trust Agreement were limited only to those "assets in its possession."  Section 20.02 only requires the Trustee to accept and hold in Trust Fund such contributions on behalf of Participants as it may receive from time to time from the Employer. Additionally, Section 20.26 only prohibits the Trustee from "accepting assets which are not either in a medium proper for investment under the Plan … or in cash." In other words, Fidelity is not responsible for holding other assets, such as a "chose in action" in this Trust. Despite the limitation on the assets that Fidelity was responsible for holding in trust, no other trust agreement was provided, and upon information and belief, exists, by which assets such as a "chose in action" would be held by another trustee in trust.

**Sun Country's Obligations Under USERRA**

50.      As an employee pension benefit plan, the Sun Country Plan and as employer, Sun Country were required to comply with USERRA § 4318. Pursuant to 38 U.S.C. § 4318(a)(1)(A), the Plan and Sun Country were required to comply with USERRA § 4318(a)(2), which provides as follows:

(A)      A person reemployed under this chapter shall be treated as not having incurred a break in service with the employer or employers maintaining the plan by reason of such person's period or periods of service in the uniformed services.

(B)      Each period served by a person in the uniformed services shall, upon reemployment under this chapter, be deemed to constitute service with the employer or employers maintaining the plan for the purpose of determining the nonforfeitability of the person's accrued benefits and for the purpose of determining the accrual of benefits under the plan.

51.      For each period of military service, USERRA § 4318(b)(1) provides that the employer is "liable to an employee pension benefit plan for funding any obligation of the plan to provide the benefits described in subsection (a)(2) [of § 4318] and shall allocate the amount of any employer contribution for the person in the same manner and to the same extent the allocation occurs for other employees during the period of service."

52.      As the Sun Country Plan is "an employee pension benefit plan described in Section 3(2) of [ERISA]," the Sun Country Plan is an employer under USERRA with respect to its "obligation to provide [the pension] benefits described in 4318" within the meaning of, 38 U.S.C. § 4303(4)©.

53.      To "comput[e] an employer's liability" to make pension contributions under § 4318(b)(1), USERRA § 4318(b)(3) provides that "the employee's compensation during the period of service described in subsection (a)(2)(B) shall be computed—

(B)  at the rate the employee would have received but for the period of service described in subsection (a)(2)(B), or

(B)  in the case that the determination of such rate is not reasonably certain, on the basis of the employee's average rate of compensation during the 12-month period immediately preceding such period (or, if shorter, the period of employment immediately preceding such period).

**The Terms of the Sun Country Plan Regarding Military Service**

54.    Section 18.06 of the 2022 Plan Document provides that "Notwithstanding any provision of this Plan to the contrary, contributions, benefits and service credit with respect to qualified military service will be provided in accordance with section 414(u) of the [Internal Revenue] Code and the regulations thereunder." By referencing IRC § 414(u) in the Plan Document, the Plan has, at least since April 19, 2022 (the adoption of the current plan document), incorporated all portions of IRC § 414(u) as part of the terms of the Plan. Based on Section 1.01(g)(2) of the Adoption Agreement, which states that Sun Country used a similar form of plan document, upon information and belief similar language was in prior versions of the Plan Document.

55.    IRC § 414(u) is contained in the Subchapter of the Internal Revenue Code governing pension and other retirement plans and is entitled, in relevant part, "Special Rules Relating to Veterans' Reemployment Rights Under USERRA." The Small Business Job Protection Act, 110 Stat. 1755 (Aug. 20, 1996) added Section 414(u) to the Code in order to accommodate compliance and make the IRC consistent with USERRA. In essence, both IRC § 414(u) required and the Plan, by incorporation, provided that all contributions to Sun Country employees would be made consistent with USERRA, including 38 U.S.C. § 4318, which requires a pension plan to include pension contributions for service members who take leave from their employers and are subsequently reemployed.

18

56.    IRC § 414(u)(5) specifically provides that "the term 'qualified military service' means any service in the uniformed services (as defined in chapter 43 of title 38, United States Code) by any individual if such individual is entitled to reemployment rights under such chapter with respect to such service."

57.    Similar to USERRA, IRC § 414(u)(7) specifically provides that for plans governed by IRC § 415(c)(3), which includes defined contribution plans such as the Sun Country Plan, "an employee who is in qualified military service shall be treated as receiving compensation from the employer during such period of qualified military service equal to

(A)     the compensation the employee would have received during such period if the employee were not in qualified military service, determined based on the rate of pay the employee would have received from the employer but for absence during the period of qualified military service, or

(B)     if the compensation the employee would have received during such period was not reasonably certain, the employee's average compensation from the employer during the 12-month period immediately preceding the qualified military service (or, if shorter, the period of employment immediately preceding the qualified military service)."

58.    As IRC § 414(u) incorporates the same substantive requirements as USERRA, particularly with respect to the terms "qualified military service" and "compensation," IRC § 414(u) imposes the same requirements on an employer and an employee benefit plan to make pension contributions to an employee who has taken a break in service with the employer to engage in military service and is later reemployed. By explicitly stating that the pension contributions for periods of qualified military service would be consistent with § 414(u) of the

19

Internal Revenue Code, the terms of the Sun Country Plan Documents effectively incorporated the requirements of USERRA as a term of the Plan.

**The Military Leave Policy Adopted, Implemented & Applied for the Sun Country Plan**

59.     Since at least 2019, when Plaintiff Smith began working at the company, many if not most Sun Country employees have not and do not earn fixed compensation each month. The compensation of Sun Country employees – particularly pilots and flight attendants -- is and was highly variable and fluctuates from month to month as a result of a number of factors that influence their "compensation" and that also vary from month to month. The largest factor that influences compensation for pilots and flight attendants is the number of flight hours that a particular employee works and is compensated for each month. When a Sun Country employee's compensation varies each month, the amount of compensation used to determine the employee's contribution also varies significantly, and causes contributions to fluctuate from month to month.

60.     When an employee is absent for military service, they are unable to log hours that would they have logged had they not been absent. Sun Country's policy or practice is to make no Plan contributions based upon these "unlogged" hours to the employee's account. As a result of the adoption and implementation of this policy or practice, which was contrary to the USERRA and the terms of the Plan, the total amount in contributions made by Sun Country to Plaintiffs and Class members was smaller than it would have been had Sun Country made contributions for periods of qualified military leave, as required by law and the Plan.

**The Plan's Fiduciaries Breached Their Fiduciary Duties**

61.     Pursuant to ERISA § 402, the written instrument governing the plan (a.k.a. the Plan Document) must describe any procedure under the plan for the allocation of responsibilities for the operation and administration of the plan.

62.     Under Section 19.01 of the Plan Document(s), Sun Country as the Plan Administrator has the full power and responsibility to administer the Plan in all its details subject to ERISA.  These powers explicitly include (a) all powers and authority to carry out the provisions of the Plan, (b) discretionary power and authority to interpret and construe the provisions of the Plan, and (c) allocate the responsibilities of the Plan Administrator among other persons.

63.     The fiduciaries of the Plan had a duty to adopt and implement policies and otherwise interpret the Plan in a manner consistent with the terms of the Plan (so long as those terms were not contrary to ERISA).

64.     Pursuant to the terms of the Plan, the adoption and implementation of any policy regarding the pension contributions for periods of qualified military service was one of the responsibilities of the Plan Administrator. As the Board of Trustees also have responsibilities for the governance of the Plan, the Board Defendants were also responsible for ensuring that the policies and practices were consistent with the Plan Document and the plan sponsor (i.e. Sun Country) properly and timely made all contributions to the Plan.

65.     The policies and practices actually implemented by the Fiduciary Defendants contradict requirements set forth in USERRA and the terms of the Plan, which incorporates USERRA's requirements (through its reference to the parallel provisions of the IRC), and as a result, constitute a breach of fiduciary duty by contradicting the terms of the Plan.

66.     By adopting and implementing this policy or failing to follow the terms of the Plan in practice, the Fiduciary Defendants breached their fiduciary duties and further breached their fiduciary duties by failing to take any action to remedy any prior violation or prevent such continuing violations of the terms of the Plan Document and USERRA.

67.    Under the terms of the Trust Agreement, Sun Country had the following fiduciary responsibilities with respect to directions that it was authorized to issue to Fidelity:

    a.    "to enforce by suit or otherwise, or waive its rights on behalf of the Trust…"

    b.    "[t]o compromise, adjust or settle any and all claims against or in favor of the Trust;"

    c.    "to employ legal, accounting, clerical and other assistance to carry out provisions of this Trust…"

    d.    "to take all such actions as may be necessary under the Trust Agreement, to the extent consistent with applicable law."

68.    As a result of the above-listed responsibilities, Sun Country had a fiduciary duty to direct the Trustee responsible for managing the assets of the Plan, to monitor and as necessary remove the Board Defendants, and/or provide proper direction to the Trustee to ensure the proper management of the assets of the Plan.

69.    Among the assets of an employee benefit plan under ERISA is a "chose in action" – the right to bring an action to recover a debt, money or a thing – to collect contractually-owed contributions from an employer like those at issue in this case. As such, a Plan Administrator properly fulfilling its fiduciary duties would have treated the contractual right to collect such contributions as an asset of the Plan.

70.    As such, the Fiduciary Defendants had a duty to ensure that the Trustee of the Plan was properly managing all assets of the Plan, including any "chose in action," and if the Trustee was not properly managing an asset, Sun Country, in conjunction with the Board Defendants, had the power and responsibility to take some action, including, as necessary to direct the Trustee. In the event that the Plan Administrator concluded that the Trustee did not

have the responsibility or obligation under the terms of the Trust Agreement to manage the "chose in action," Sun Country had the duty to either amend the terms of the agreement with the Trustee or to appoint an additional Trustee who had such authority and obligation.

71.     Upon information and belief, the Fiduciary Defendants failed to take any action to pursue this "chose in action" with respect to the additional contributions owed for military service performed by the members of the Class.

72.     One of the assets of an employee benefit plan under ERISA is a "chose in action" – the right to bring an action to recover a debt, money or a thing – to collect contractually-owed contributions from an employer. As such, one of the assets of the Plan and one of the debts on which an action could be brought on behalf of the Trust or the Plan was an action to collect the debt of contractually-owed contributions from Sun Country, including the contractually-owed debt of contributions owed to members of the Class related to their rights to receive contributions as provided under USERRA and the terms of the Plan for their military service.

73.     Upon information and belief, Sun Country failed to (a) direct the Trustee do any of the following: (a) demand that Sun Country (as plan sponsor) make contributions to the Plan based on the employees' qualified military service consistent with the terms of the Plan Document and USERRA; (b) direct the Trustee to investigate or consider taking legal action to remedy the ongoing violation of the terms of the Plan Document and USERRA with respect to pension contributions for qualified military service; (c) ensure that all assets of the Plan, including any "chose in action" for contractually-owed contribution obligations, were held in trust and prudently and properly managed; or (e) take any action to remedy the breaches by any other fiduciary, including instituting a legal action against the other fiduciaries for their breaches.

**Sun Country's Actions Were Willful**

74.     By at least October 2022, Plaintiff Smith and another Sun Country pilot, Andrew Britton (who is also a reservist), informed Defendant Sun Country – specifically, Eric Levenhagen, Senior Vice President and Chief Human Resources Officer – that Sun Country was not in compliance with USERRA regarding its contributions to the Plan for periods of military service. They also provided Mr. Levenhagen with a copy of 29 C.F.R. § 1002.259-267, the regulations that specifically address pension contributions for military leave under USERRA.

75.     After Sun Country had taken no observable action to fix the problem either retroactively or prospectively, Plaintiff Smith, who serves on the Membership & Military Affairs of ALPA (the union that represents Sun Country Pilots) informed Sun Country's Chief Pilot's office on May 10, 2023 that ALPA intended to advise it pilot servicemembers about  Sun Country's lack of compliance with its obligations under USERRA regarding its pension contributions to the 401(k) plan. The email, which Plaintiff Smith provided to Sun Country as well, explained as follows:

> Under USERRA, Sun Country is required to make 401(k) non-elective contributions to pilots' Sun Country, Inc. 401(k) Plan accounts, in the amount the pilot would have received but for military service, no later than 90 days following reemployment from military leave. Returning servicemembers have a right to these contributions regardless of the length of the pilot's military service.
>
> * * * *
>
> USERRA also gives pilots returning from military leave, regardless of length of service, the right to make up any missed elective deferrals (voluntary contributions to the 401(k) plan) upon reemployment. Pilots have up to three times the length of the period of military service, but no longer than five years, to make these contributions.

76.     In mid-August 2023, Plaintiff Smith and other ALPA representatives met with several Sun Country representatives including Eric Levenhagen, Brian Scudds (Senior Manager Labor Relations) and Thomas Schwenke (Senior Manager Benefits and HR Operations) and

discussed Sun Country's continued failure to meet its requirements to make pension contributions for military service to the Plan consistent with USERRA. At the conclusion and/or following that meeting, Mr. Levenhagen stated that Sun Country had a plan to fix the problem within several weeks.

77.     After Sun Country still failed to fix its failure to provide pension contributions for periods of military leave by the time that Plaintiffs Smith and George returned to the United States from military service in early December 2023, Plaintiff Smith sent a letter on December 8, 2023 requesting the formal plan documents from the Plan Administrator pursuant to ERISA § 104(b)(4). On January 16, 2024, Sun Country responded by providing some, but not all, of the documents required by ERISA § 104(b)(4). These documents were received by Plaintiff Smith on January 23, 2024. Among the documents that Sun Country initially failed to provide in response were a service contract and the Trust Agreement. On January 30, 2024, Plaintiff Smith requested these additional documents and Sun Country provided those documents on February 7, 2024. Plaintiff Smith does not know whether Sun Country failed to provide any additional documents, but for purposes of this Complaint assumes that such documents (e.g. a written instrument appointing the Board of Trustees) do not exist.

78.     Even before Plaintiff Smith and ALPA explicitly advised Sun Country that it was not complying with USERRA, Sun Country's actions were willful in part because it employs over one hundred persons in Human Resources. Since July 2022, Sun Country's Chief Human Resources Officer has been Eric Levenhagen, who previously served as Sun Country's General Counsel beginning in September 2016. Not only is Mr. Levenhagen an attorney, but he previously was assistant general counsel for another aviation company. Based on the foregoing,

Sun Country has been well-aware of its USERRA-obligations regarding its pension plans since at least 2016 if not before.

79.     Sun Country is a party to numerous contracts with the United States government, specifically, the Department of Defense that are over $150,000. Such contracts, as required by the Vietnam Era Veterans' Readjustment Assistance Act of 1974 ("VEVRAA") 38 USC § 4212, prohibit employers like Sun Country, who do business with the federal government as federal contractors or subcontractors and have over 50 employees, from discriminating in employment against veterans and requires these contractors to take affirmative action to recruit, hire, promote, and retain protected veterans. As a result, Sun Country was aware of its obligations to comply with USERRA, including with respect to its pension plan.

80.     Sun Country was also required by USERRA, 38 U.S.C. § 4334 to maintain workplace posters that set out employer responsibilities under USERRA.  Upon information and belief, Sun County maintained such posters and those posters would have made Sun Country aware of its obligations under USERRA.

## COUNT I
### Violation of USERRA, 38 U.S.C. § 4318, Against Sun Country

81.     Plaintiff repeats and incorporates the allegations contained in the foregoing paragraphs as if fully set forth herein.

82.     USERRA, 38 U.S.C. § 4318(a)(2)(B), provides that an employee's service in the uniformed service will be deemed to constitute service with the employer for purposes of determining the accrual of benefits under the pension plan.

83.     Pursuant to USERRA, 38 U.S.C. § 4318(b)(1), an employer reemploying a person after a period of service in the uniformed services is liable to the employee benefit pension plan

for funding any obligation of the plan to provide benefits, including those accrued under

USERRA § 4318(a)(2)(B).

84.     Pursuant to USERRA, 38 U.S.C. § 4318(b)(3), for purposes of computing an

employer's liability under § 4318(b)(1), the employee's compensation during the period of

uniformed service must be computed --

> (A) at the rate the employee would have received but for the period of
> service described in subsection (a)(2)(B), or
>
> (B) in the case that the determination of [the employee's rate of compensation] is
> not reasonably certain, on the basis of the employee's average rate of
> compensation during the 12-month period immediately preceding such period (or,
> if shorter, the period of employment immediately preceding such period).

85.     From at least 2019 to the present, Sun Country has failed to make contributions

into Plaintiffs' accounts in the Plan that included their periods of military service. Upon

information and belief, during all or a portion of the time from 2011 to the present, Sun Country

had a policy or practice by which it failed to make pension contributions to the Plan for periods

of qualified military service for other members of the Class as well.

86.     Because Sun Country failed to make contributions consistent with USERRA,

Plaintiffs and the Class received pension contributions in their Plan accounts that were smaller

than what they would have received had Sun Country and the Plan complied with USERRA.

## COUNT II
### Violation of ERISA §§ 404(a)(1)(A), (B) and (D)
### Against Sun Country and the Board Defendants

87.     Plaintiff repeats and incorporates the allegations contained in the foregoing

paragraphs as if fully set forth herein.

88.     As fiduciaries of the Plan, Sun Country and the Board Defendants were required

under ERISA §§ 404(a)(1)(A), (B) and (D), 29 U.S.C. §§ 1104(a)(1)(A), (B), and (D), to

discharge their duties with respect to the Plan solely in the interest of the participants and beneficiaries and (A) for the exclusive purpose of providing benefits to the participants and beneficiaries of the Plan; (B) with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent person acting in like capacity and familiar with such matters would use; and (D) in accordance with the documents and instruments governing the American Plan in so far as those documents are consistent with ERISA.

89.     Pursuant to Section 19.01 of the Plan Document, Sun Country as the Plan Administrator had all the authority and responsibility for administration of the Plan, including to decide questions concerning the application or interpretation of the Plan and all other powers necessary for the administration of the Plan.

90.     Section 18.06 of the Plan Document explicitly provided: "Notwithstanding any provision of this Plan to the contrary, contributions, benefits and service credit with respect to qualified military service will be provided in accordance with section 414(u) of the [Internal Revenue] Code and the regulations thereunder."IRC § 414(u), in turn, effectively incorporates the requirements of USERRA with respect to military leave and pension contributions, including the procedure to calculate the amount of such contributions when an employee's compensation is not reasonably certain during a period of qualified military service.

91.     Contrary to the provisions of the Plan, Sun Country and the Board Defendants consistently failed to require or adopted and/or applied a policy regarding the amount of contributions to the accounts of the Plan for periods of qualified military service that did not comply with IRC § 414(u)(7) and, as a result, also did not comply with the terms of the Plan.

92.     By failing to follow the terms of the Plan or alternatively adopting and implementing a policy that failed to include contributions for military service, Sun Country and

the Board Defendants breached their fiduciary obligations under ERISA by failing to discharge

their duties with respect to the Plan solely in the interests of the participants and beneficiaries (A)

for the exclusive purpose of providing benefits to participants and beneficiaries, (B) with the

care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person

acting in a like capacity and familiar with such matters would use in the conduct of an enterprise

of like character and aims, and (D) in accordance with the documents and instruments governing

the Plan, all in violation of ERISA §§ 404(a)(1)(A), (B), and (D), 29 U.S.C. §§ 1104(a)(1)(A),

(B) and (D).

93.     As a result of the breaches by Sun Country and the Board Defendants, the Plan

suffered a loss and the participants who are members of the Class correspondingly suffered

losses to their particular accounts.

## COUNT III
**Violation of ERISA §§ 404(a)(1)(A), (B) and (D) Against Defendant Sun Country**

94.     Plaintiff repeats and incorporates the allegations contained in the foregoing

paragraphs as if fully set forth herein.

95.     Pursuant to Section 20.04 of the Trust Agreement, Defendant Sun Country had

the authority, power and responsibility to direct Fidelity as Trustee to (a) enforce by suit or

otherwise its rights on behalf of the Trust, (b) to employ legal, accounting and other assistance to

carry out the provisions of the Trust, (c) to compromise, adjust and settle any and all claims in

favor of the Trust and (d) to take all such actions as may be necessary under the Trust Agreement

consistent with applicable law.

96.     In exercising its fiduciary duties under the Trust Agreement, Defendant Sun

Country was required to discharge its duties with respect to the Plan solely in the interests of the

participants and beneficiaries (A) for the exclusive purpose of providing benefits to participants

29

and their beneficiaries, (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and like aims, and (D) in accordance with the documents and instruments governing the plan, pursuant to ERISA §§ 404(a)(1)(A), (B), and (D), 29 U.S.C. §§ 1104(a)(1)(A), (B) and (D).

97. Upon information and belief, at no time did Defendant Sun Country take any action to direct Fidelity to take any legal action, or exercise other power or authority that Fidelity could have exercised under the Trust Agreement or ERISA to require the plan sponsor (i.e. Sun Country) to make pension contributions for qualified military service in a manner that was consistent with the Plan Document and, by incorporation, the IRC and USERRA.

98. By failing to take action to direct Fidelity take action requiring that pension contributions be made to the Plan or Trust for qualified military service consistent with the Plan Document and/or the IRC and/or USERRA, including by failing to take any legal action to recover for the Plan those pension contributions, Defendant Sun Country violated ERISA §§ 404(a)(1)(A), (B), and (D), 29 U.S.C. §§ 1104(a)(1)(A), (B) and (D).

99. As a result of the breaches by Defendant Sun Country, the Plan suffered a loss and the participants who are members of the Class correspondingly suffered losses to their particular accounts.

## COUNT IV
### Violation of ERISA § 403(a) & ERISA § 404(a)(1)(D) Against Defendant Sun Country & the Board Defendants

100. Plaintiff repeats and incorporates the allegations contained in the foregoing paragraphs as if fully set forth herein.

101.    ERISA § 403(a) provides in relevant part (with exceptions not relevant here) that "all assets of an employee benefit plan shall be held in trust by one or more trustees" and that such trustee(s) shall be either named in the trust agreement or in the plan instrument described in [ERISA §] 402(a) or appointed by a person who is a named fiduciary and upon acceptance of being named or appointed, the trustee shall have exclusive authority and discretion to manage and control the assets of the plan.

102.    ERISA § 404(a)(1)(D) requires fiduciaries to act in accordance with the terms of the Plan only "insofar as such documents and instruments are consistent with the provisions of [ERISA Title I and Title IV]," which includes ERISA § 403(a). As such, notwithstanding anything in the Trust Agreement, Defendant Sun County and the Board Defendants had an obligation to ensure that the assets of the Plan, including any chose in action, were held in trust.

103.    As explained in Section I.S of the Summary Plan Description, the duties of Fidelity as trustee in the Trust Agreement were limited only to those "assets in its possession."

104.    In addition to the assets actually contributed to the Plan and Trust, the assets of the Plan also consisted of the right to receive contributions, including any "chose in action."

105.    The authority to manage the "chose in action" to collect the unpaid employer contributions from Sun Country was not assigned to any other trustee or fiduciary.

106.    As a result of this limitation in the Trust Agreement and the lack of any other Trustee appointed under the Plan to hold and manage the assets in Trust, any "chose in action," including any action to collect unpaid employer contributions, was not held in trust in violation of ERISA.

107.    By failing to ensure that Fidelity or another trustee held all of the assets of the Plan in Trust, Sun Country and the Board Defendants caused the Plan to violate ERISA § 403(a)

and breached their fiduciary duties under ERISA § 404(a)(1)(A), (B), and (D), 29 U.S.C. §

1104(a)(1)(A), (B) and (D).

108.    As a result of the breaches by Defendant Sun Country and the Board Defendants,

the Plan suffered a loss and the members of the Class correspondingly also suffered losses to

their particular accounts.

## COUNT V
**Violation of ERISA § 404(a)(1)(A), (B), 29 U.S.C. § 1104(a)(1)(A) and (B) Against
Defendant Sun Country For Failure to Monitor Other Fiduciaries**

109.    Plaintiff repeats and incorporates the allegations contained in the foregoing

paragraphs as if fully set forth herein.

110.    Pursuant to Section 19.01 of the Plan, Defendant Sun Country had the authority to

appoint other fiduciaries to administer the Plan so long as such allocation or delegation by

written instrument. As no written instrument was provided in response to Plaintiff Smith's

request for such documents, the Board Defendants do not appear to be properly appointed under

the terms of the Plan.  Regardless of whether the members of the Board of Trustees were

properly appointed as fiduciaries under the Plan, Defendant Sun Country, as the fiduciary with

the power to appoint other fiduciaries to administer the Plan, had a duty to monitor the Board

Defendants' conduct and to take appropriate action if the Board Defendant were not adequately

protecting the interests of the Sun Country Plan participants.

111.    Defendant Sun Country knew or, in the exercise of reasonable diligence, should

have known – as the contributions for military service would have been collected from Sun

Country and because Plaintiffs and ALPA told Sun Country of its failures -- that the Board

Defendants had not appropriate taken action to collect the pension contributions owed to the

Trust and was not holding the "chose in action" to collect the contractually-owed contributions in Trust.

112.     Pursuant to Section 20.19 of the Trust Agreement, Defendant Sun Country had the power to remove the Trustee.  As the fiduciary that had appointed the Trustee and the fiduciary with the power to remove the Trustee, Defendant Sun Country had a duty to monitor Fidelity's conduct and to take appropriate action if Fidelity was not adequately protecting the interests of the Sun Country Plan participants.

113.     To the extent that Sun Country issued direction to Fidelity to take action with respect to pension contributions for miliary service and Fidelity refused to take action, Sun Country had an obligation to remove Fidelity and appoint another Trustee.

114.     By failing to properly monitor and/or take appropriate action against, including the removal of the Board Defendants and/or Fidelity, Sun Country breached its fiduciary duties under ERISA by failing to discharge their duties with respect to the Plan solely in the interest of the participants and beneficiaries (A) for the exclusive purpose of providing benefits to participants and beneficiaries and (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and aims, all in violation of ERISA § 404(a)(1)(A) and (B), 29 U.S.C. § 1104(a)(1)(A) and (B).

115.     As a result of the breaches by Defendant Sun Country, the Plan suffered a loss and the participants who are members of the Class correspondingly also suffered losses to their individual accounts.

<u>COUNT VI</u>
**Violation of ERISA § 405(a) Against the Fiduciary Defendants**

116.    Plaintiff repeats and incorporates the allegations contained in the foregoing

paragraphs as if fully set forth herein.

117.    As fiduciaries, the Fiduciary Defendants (i.e. Defendants other than the Plan) are

liable, in addition to any other liability, for their own personal acts and for the breach of

fiduciary responsibility of another fiduciary with respect to the Plan pursuant to ERISA §

405(a)(1)-(3), 29 U.S.C. § 1105(a)(1)-(3).

118.    By virtue of their positions on the Board of Trustees and the actions that they took

as a Board, each of the Board Defendants in his or her individual capacity also knew or should

have known that the other members of the Board were engaging in the breaches described above.

By failing to take steps to protect the Plan and its participants and beneficiaries who are members

of the Classes, the individual Board Defendants breached their fiduciary duties under ERISA:

a.    by knowingly participating in an act or omission of such other fiduciaries,

the other Board Defendants, knowing that such act or omission was a breach;

b.    by failing to comply with the duties imposed on them by ERISA

§ 404(a)(1), 29 U.S.C. § 1104(a)(1), in the administration of the specific responsibilities

which gave rise to their status as fiduciaries, enabling the other Board Defendants to

commit a breach; and

c.    by knowing of the breach by the other Board Defendants and failing to

make reasonable efforts under the circumstances to remedy the breach.

As such, each is liable for the breaches of fiduciary responsibility of the other Board Defendants

pursuant to ERISA § 405(a)(1)-(3), 29 U.S.C. § 1105(a)(1)-(3).

119.     As the Plan Administrator of the Plan, Defendant Sun Country knew of the terms of the Plan (i.e. those set forth in the Plan Document) and, as a result, would have known either the manner by which the Board Defendants were interpreting the Plan or, at a minimum, as Plan Sponsor, would have known the manner in which contributions for military service were being made to the Plan and therefore that the Board Defendants were engaging the breaches described above. By failing to take steps to protect the Plan and its participants and beneficiaries who are members of the Classes, Defendant Sun Country breached its fiduciary duties under ERISA by:

a.     knowingly participating in an act or omission of such other fiduciaries, the Board Defendants, knowing that such an act or omission was a breach;

b.     failing to comply with the duties imposed on them by ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), in the administration of the specific responsibilities which gave rise to their status as fiduciaries, enabling the Board Defendants to commit a breach or at least to continue committing a breach; and

c.     knowing of the breach by the Board Defendants but failing to make reasonable efforts under the circumstances to remedy the breach.

As such, Defendant Sun Country is liable for the breaches of fiduciary responsibility of the Board Defendants pursuant to ERISA § 405(a)(1)-(3), 29 U.S.C. § 1105(a)(1)-(3).

## ENTITLEMENT TO RELIEF

120.     By virtue of the violation of USERRA described in the preceding paragraphs, Plaintiff and the Class are entitled to a declaration that Sun Country and the Plan was required to comply with USERRA, 38 U.S.C. § 4318(b)(3)(B), relief against Sun Country and the Plan, and in the event that any losses are recovered for the Plan, an order that contributions be allocated to the Class members' individual accounts in accordance with USERRA.

121. By virtue of the violations of ERISA described in the preceding paragraphs, Plaintiff and the Class, as plan participants and beneficiaries, are entitled to sue the fiduciaries pursuant to ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), for relief on behalf of the Plan as provided in ERISA § 409, 29 U.S.C. § 1109, including recovery for the Plan of any losses to the Plan resulting from each such breach and for such other equitable or remedial relief as the court may deem appropriate.

122. By virtue of the violations of ERISA described in the preceding paragraphs, Plaintiff and the Class, as plan participants and beneficiaries, are entitled to sue the fiduciaries pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), to enjoin the ongoing breach of fiduciary duty, the ongoing violations of ERISA, and the ongoing practices identified above that violate the terms of the Plan, and to obtain other appropriate equitable relief to redress such violations and/or to enforce the provisions of ERISA and the terms of the Plan.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiff prays that judgment be entered against Defendants on all claims and respectfully requests that this Court award the following relief:

A. Declare that Plaintiff and the Class were and are entitled under USERRA and the terms of the Plan to receive contributions to their Plan accounts that includes their qualified military service and order that the benefits of the Plaintiffs and the Class be re-calculated consistent with USERRA;

B. Declare that Sun Country and the Board Defendants breached their fiduciary duties by failing to require Sun Country to make contributions for periods of qualified military service in compliance with the Plan Document and by failing to take any other action to prevent, cease, or remedy the violations of the Plan Document;

C.      Declare that Defendant Sun Country and the Board Defendants breached their respective fiduciary duties by failing to properly manage the assets of the Plan, by failing to hold all of the assets in Trust, and by failing to take any action, including instituting a lawsuit to seek additional contributions based on the terms of the Plan or to take any other action to prevent, cease, or remedy the violations of the Plan Document and USERRA;

D.      Reform the terms of the Trust Agreement and/or the terms of the Plan, as necessary, to require the Trustee or some other fiduciary of the Plan to hold all assets of the Plan in trust and to manage those assets consistent with the obligations under ERISA § 403(a);

E.      Remove each fiduciary that is determined to have breached his, her, or its fiduciary duties to the Plan from his, her, or its role as a fiduciary of the Plan and enjoining any of the breaching fiduciaries from acting as fiduciaries for any ERISA-covered plan sponsored by Sun Country;

F.      Order Defendant Sun Country to pay all members of the Class liquidated damages in an amount to be determined at trial, 38 U.S.C. § 4323(d)(1)(C);

G.      Determine that any agreement that constitutes any limitation on the rights of Plaintiffs or the Class under USERRA, is illegal, null and void, inapplicable and of no force or effect pursuant to 38 U.S.C. § 4302;

H.      Remove the current Fiduciary Defendants and appoint an independent fiduciary to administer the Plan;

I.      Require each fiduciary that is determined to have breached his, her, or its fiduciary duties to the Plan to jointly and severally restore to the Plan such amount as is necessary to make the Plan whole for any losses which resulted from any breaches of fiduciary duty, including any additional remedies imposed against the Plan in this litigation, including any

liquidated damages, pre-judgment or post-judgment interest awarded against the Plan, any fees or expenses awarded against the Plan, to disgorge any profits made by those fiduciaries with the assets of the Plan or as a result of those breaches, and as necessary to satisfy the award to order the account balances of the breaching fiduciaries to be transferred to the Plan accounts of Plaintiff and the Class;

J.      Award an amount to be paid to the Plan and then to the individual accounts of Plaintiff and the Class, whether by calculation of losses or by imposing a surcharge on the breaching fiduciaries, that fully accounts for the failure to make these contributions when originally due, such as lost earnings on the unmade contributions and/or awarding pre-judgment interest on the amount of contributions that were required to be made under USERRA and the terms of the Plan but which were not made, whichever amount is greater, plus awarding post-judgment interest;

K.      Order the proceeds of any recovery for the Plan to be allocated to the accounts of the Class to make them whole for any injury that they suffered as a result of the breaches of fiduciary duty in accordance with the Court's declaration with respect to the terms of the Plan and USERRA;

L.      Require Defendant Sun Country to pay attorneys' fees and costs pursuant to 38 U.S.C. § 4323(h), requiring the Fiduciary Defendants to pay attorneys' fees and costs of this action pursuant to ERISA § 502(g)(1), 29 U.S.C. § 1132(g)(1) and/or this Court's inherent equitable authority and powers, and ordering the payment of reasonable attorneys' fees and expenses of this action to Plaintiff's Counsel on the basis of the common benefit and/or common fund doctrine (or other applicable law) out of any money or benefit recovered for the Class or the Plan in this Action; and

M.     Award such other and further relief that the Court determines that Plaintiff and the

Class are entitled to pursuant to USERRA 38 U.S.C. § 4323, ERISA § 502(a), 29 U.S.C. §

1132(a), pursuant to Rule 54(c) of the Federal Rules of Civil Procedure or that is equitable and

just.

<strong><u>JURY DEMAND</u></strong>

Plaintiffs demands a jury on all claims for which there is a right to a jury.

Dated: February 27, 2024                    Respectfully submitted,

Kent M. Williams
Williams Law Firm
1632 Homestead Trail
Long Lake, MN 55356
Tel: 612-940-4452
Email: kent@williamslawfirmmn.com

R. Joseph Barton
(*pro hac vice* application to be filed)
Colin M. Downes
(*pro hac vice* application to be filed)
Barton & Downes LLP
1633 Connecticut Avenue NW
Suite 200
Washington, DC 20009
Tel: 202-734-7046
Email: jbarton@bartondownes.com
Email: colin@bartondownes.com

Thomas G. Jarrard
(*pro hac vice* application to be filed)
Law Office of Thomas Jarrard, PLLC
1020 N Washington Street
Spokane, WA 99201
Tel: 425-239-7290
Email: TJarrard@att.net

*Attorneys for Plaintiffs*