**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| Nicholas Smith and Derik George, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>Sun Country, Inc., The Board of Trustees of the Sun Country, Inc. 401(k) Profit Sharing Plan, John Does and Jane Does 1-50,<br><br>Defendants.<br><br>The Sun Country, Inc. 401(k) Profit Sharing Plan,<br><br>Nominal Defendant. | No. 24-cv-619-KMM-EMB<br><br>Hon. Kate M. Menendez<br>Magistrate Judge Elsa M. Bullard |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

# TABLE OF CONTENTS

INTRODUCTION ....................................................................................1

BACKGROUND ....................................................................................2

I. Summary of the Claims in the Complaint. ....................................................2

II. Procedural History. ....................................................................3

III. Overview of the Settlement Terms. ...........................................................5

ARGUMENT ....................................................................................7

I. The Settlement Should be Preliminarily Approved. ........................................8

A. Plaintiffs and Counsel Have Adequately Represented the Class. .........9

B. The Settlement Was Negotiated at Arm's Length. .............................10

C. The Relief Provided to the Class Is More Than Adequate. ................12

1. The Costs, Risks and Delay Favor Approval. ...........................13

2. The Method of Distributing Relief to the Class Will Be Highly Effective. ....................................................................16

3. The Terms Relating to Attorneys' Fees Are Reasonable. ........18

4. The Separate Agreement is Appropriate. ................................19

D. The Proposed Settlement Treats Class Members Equitably. ..............20

E. Other Factors Do Not Weigh Against Approval. ................................21

II. The Proposed Plan of Allocation Should be Approved. ..............................22

III. The Class Notice & Plan of Notice Should be Approved. ............................23

IV. The Court Should Appoint a Settlement Administrator. ...............................25

V. The Court Should Establish Deadlines for the Settlement. ...........................26

CONCLUSION ....................................................................................27

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. City and Cnty. of San Francisco*,
No. 4:20-cv-01149-DMR, 2025 WL 3785958 (N.D. Cal. Dec. 18, 2025) ....17, 18, 21

*Baird v. BlackRock Inst. Trust Co., N.A.*,
No. 17-cv-01892-HSG, 2021 WL 5991060 (N.D. Cal. July 12, 2021) ....24

*Barclay v. iFIT Health & Fitness, Inc.*,
No. 19-cv-2970, 2025 WL 3004039 (D. Minn. Oct. 27, 2025) ....10

*Becker v. Wells Fargo & Co.*,
No. 0:20-cv-2016, 2022 WL 1210948 (D. Minn. Apr. 25, 2022) (Menendez, J.) ....8

*Bennett v. Schnader Harrison Segal & Lewis LLP*,
No. 2:24-cv-00592-JMY, 2026 WL 202548 (E.D. Pa. Jan. 22, 2026) ....16, 17

*In re Blue Cross Blue Shield Antitrust Litig.*,
85 F.4th 1070 (11th Cir. 2023) ....20

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980) ....18

*Bowers v. Russell*,
No. 22-cv-10457-PBS, 2026 WL 1506413 (D. Mass. May 29, 2026) ....15

*Caligiuri v. Symantec Corp.*,
855 F.3d 860 (8th Cir. 2017) ....18

*Clarkson v. Alaska Airlines, Inc.*,
No. 2:19-CV-0005-TOR, 2025 WL 243024 (E.D. Wash. Jan. 15, 2025) ....13

*Cullan & Cullan LLC v. M-Qube, Inc.*,
No. 8:13CV172, 2016 WL 5394684 (D. Neb. Sept. 27, 2016) ....14

*Custom Hair Designs by Sandy, LLC v. Cent. Payment Co., LLC*,
No. 8:17CV310, 2022 WL 704063 (D. Neb. Mar. 9, 2022) ..............................22

*D'Amato v. Deutsche Bank*,
236 F.3d 78 (2d Cir. 2001) ..........................................................................10

*Davis v. United Bank Corp. Ret. Plan Comm.*,
No. 5:24-CV-328-MTT, 2025 WL 3142143 (M.D. Ga. Nov. 7, 2025) ..........................................................................17, 18, 20, 21

*DeBoer v. Mellon Mortg. Co.*,
64 F.3d 1171 (8th Cir. 1995) ..........................................................................7

*DeFazio v. Hollister, Inc.*,
854 F.Supp.2d 770 (E.D. Cal. 2012) ..............................................................15

*Eisen v. Carlisle & Jacquelin*,
417 U.S. 156 (1974). Notice ..........................................................................23

*George v. Uponor Corp.*,
No. 12–249, 2015 WL 5255280 (D. Minn. Sept. 9, 2015)................................14

*Glynn v. Me. Oxy-Acetylene Supply Co.*,
No. 2:19-cv-00176-NT, 2022 WL 17617138 (D. Me. Dec. 13, 2022) ..........................................................................................17, 18

*Greco v. Ginn Dev. Co., LLC*,
635 Fed. Appx. 628 (11th Cir. 2015) (unpublished) ........................................26

*Hashw v. Dep't Stores Nat'l Bank*,
182 F.Supp.3d 935 (D. Minn. 2016)................................................................14

*Holmes v. Cont'l Can Co.*,
706 F.2d 1144 (11th Cir. 1983) ......................................................................21

*In re Jiffy Lube Secs. Litig.*,
927 F.2d 155 (4th Cir. 1991) ..........................................................................10

*Kloss v. Argent Trust Co.*,
No. 23-301, 2025 WL 2374070 (D. Minn. Aug. 15, 2025)..............................7, 8

*Krueger v. Ameriprise Fin., Inc.*,
No. 11–CV–02781, 2015 WL 4246879 (D. Minn. July 13, 2015) .............15, 19

*Kruger v. Lely N. Am., Inc.*,
No. 0:20-cv-00629-KMM/DTS, 2023 WL 5665215 (D. Minn. Sept. 1, 2023) ........ 9

*Mandalevy v. Bofl Holding, Inc.*,
No. 3:17-cv-667-GPC-MSB, 2022 WL 4474263 (S.D. Ca. Sept. 26, 2022) ........ 19

*Martin v. Cargill, Inc.*,
295 F.R.D. 380 (D. Minn. 2013) ........ 7

*Messineo v. Ocwen Loan Servicing, LLC*,
No. 15-cv-02076-BLF, 2017 WL 733219 (N.D. Cal. Feb. 24, 2017) ........ 9

*Petrovic v. Amoco Oil Co.*,
200 F.3d 1140 (8th Cir. 1999) ........ 7, 8, 22, 24

*Probst v. Eli Lilly and Co.*,
No. 1:22-cv-01986-MKK-SEB, 2023 WL 11051728 (S.D. Ind. Nov. 21, 2023) ........ 20

*Randall v. GreatBanc Trust Co.*,
No. 22-cv-2354, 2025 WL 3513880 (D. Minn. Dec. 8, 2025) ........ 7, 8

*Randall v. GreatBanc Trust Co.*,
No. 22-cv-2354, 2026 WL 1068035 (D. Minn. Apr. 20, 2026) ........ 10, 22

*Reetz v. Lowe's Cos., Inc.*,
No. 5:18-CV-00075, 2021 WL 4771535 (W.D.N.C. Oct. 12, 2021) ........ 15

*Scanlan v. Am. Airlines Grp., Inc.*,
No. 18-4040, 2024 WL 3993207 (E.D. Pa. Aug. 29, 2024) ........ 16

*Stotesbery v. Ayvaz Pizza, LLC*,
No. 0:22-cv-01622-KMM-DLM, 2026 WL 412643 (D. Minn. Feb. 13, 2026) ........ 18

*Sullivan v. DB Inv., Inc.*,
667 F.3d 273 (3rd Cir. 2011) ........ 22

*Swinton v. SquareTrade, Inc.*,
454 F.Supp.3d 848 (S.D. Iowa 2020) ........ 9, 20

*Tussey v. ABB, Inc.*,
850 F.3d 951 (8th Cir. 2017) ....................................................................15

*In re UnitedHealth Grp. Inc. S'holder Derivative Litig.*,
631 F.3d 913 (8th Cir. 2011) ....................................................................23

*In re Uponor, F1807 Plumbing Fittings Prods. Liab. Litig.*,
716 F.3d 1057 (8th Cir. 2013) ....................................................................8

*Van Horn v. Trickey*,
840 F.2d 604 (8th Cir. 1988) ......................................................................9

*Walkinshaw v. CommonSpirit Health*,
No. 4:19CV3012, 2022 WL 5255287 (D. Neb. Oct. 6, 2022) ..............22, 24, 25

*Walsh v. Bowers*,
561 F.Supp.3d 973 (D. Haw. 2021)..........................................................15

*Wit v. United Behav. Health*,
79 F.4th 1068 (9th Cir. 2023) ....................................................................15

*Zilhaver v. UnitedHealth Grp., Inc.*,
646 F.Supp.2d 1075 (D. Minn. 2009)........................................................22

*In re Zurn Pex Plumbing Prods. Liab. Litig.*,
No. 08–MDL–1958 ADM/AJB, 2013 WL 716088 (D. Minn. Feb.
27, 2013) .....................................................................................................7

**Statutes**

28 U.S.C. § 1715 .........................................................................................26

USERRA § 4318 .........................................................................................2, 3

**Other Authorities**

68 Fed. Reg. 75632 .......................................................................................6

75 Fed. Reg. 33830 .......................................................................................6

Fed. R. Civ. P. 23 .................................................................................*passim*

2 *McLaughlin on Class Actions* § 6:22 (21st ed.)...............................................20

## INTRODUCTION

Plaintiffs seek preliminary approval of a Settlement that provides substantial relief to a Class of participants in the Sun Country, Inc. 401(k) Profit Sharing Plan (the "Plan") who took leave to perform qualified military service between July 21, 2011 and December 31, 2025, were re-employed at Sun Country, but did not receive a pension contribution as required by USERRA for that leave (and their beneficiaries).[1] This Settlement requires Defendants to pay $1,550,000.00 into a Settlement Fund, plus expenses related to settlement administration, and to also provide disclosure to participants about their methodology and calculations of pension contributions for periods of military leave in the future. After deduction of any Court-approved attorneys' fees and expenses, the Net Settlement Amount will be allocated among the Class and paid into their Plan accounts (unless such amounts cannot be paid there), which provides substantial tax benefits. By Plaintiffs' counsel's calculations, the amount being paid in this Settlement constitutes the full amount of what the Class could have obtained (other than liquidated damages). In exchange, the Classes will dismiss with prejudice the Claim in the Complaint and

[1] Sometime after this lawsuit was filed, Sun Country started making pension contributions going forward for military leaves. Sun Country has represented that as of October 1, 2025, it implemented a methodology for calculating such contributions that is intended to comply with USERRA, ERISA and the terms of the Plan. Settlement Agreement ("Agmt.") § II.5. Defendants also produced data from October 1, 2025 to December 31, 2025 that allowed Plaintiffs' counsel and Plaintiffs' expert to assess those contributions. Barton Decl. ¶ 9.

release Defendants from any claims relating to or arising out of the same factual predicate as the claim in the Complaint during the Class Period. This Settlement was reached only after Defendants produced the necessary documents and data to Plaintiffs' counsel, who have extensive experience litigating claims under the Uniformed Services Employment and Reemployment Rights Act of 1994, 38 U.S.C. § 4301 et seq. ("USERRA") and the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq. ("ERISA"), extensive settlement arms-length settlement negotiations, including two settlement conferences with a Magistrate Judge. The Settlement represents an excellent result for the Class and should receive preliminary approval.

## BACKGROUND

### I. Summary of the Claims in the Complaint.

The Complaint alleges that Sun Country was required under USERRA § 4318 and the terms of its defined contribution 401(k) and Profit Sharing Plan to make employer contributions to the Plan when employees returned from military leave. Compl. ¶¶ 50-52, 54-58. The Complaint also alleges that since at least 2011, Sun Country failed to do so. *Id.* ¶¶ 59-60. The Complaint alleges that the Plan fiduciaries, which are Sun Country and the Board of Trustees of the Sun Country, Inc. 401(k) Profit Sharing Plan (the "Board of Trustees"), had fiduciary duties to administer the Plan, and to enforce the terms of the Plan and manage the assets of

the Plan, which included the right to collect pension contributions (which contributions are a debt owed by Sun Country to the Plan), but those fiduciaries failed to take any action to enforce those terms or properly manage this asset of the Plan. *Id.* ¶¶ 61-73. The Complaint alleges six claims against Defendants on behalf of a Class. Count I alleges that Sun Country violated USERRA § 4318 by failing to make contributions to the Plan for periods of military leave. Compl. ¶¶ 81-86. Counts II-VI alleges that Sun Country and/or the Board of Trustees violated their ERISA fiduciary duties. *Id.* ¶¶ 87-119.

## II. Procedural History.

Plaintiffs filed the Complaint on February 27, 2024. ECF No. 1. Shortly after the Complaint, counsel for Plaintiffs and Defendants began discussing the possibility of settling the claims in the Complaint. ECF No. 11 ¶ 3. Plaintiffs conditioned settlement discussion on Defendants producing certain documents and data, including about the periods of military leave for each potential class member and also documents about the contributions for military leave and the investments in the Plan into which the contributions would have been made, identification of the Board of Trustees and insurance policies. Barton Decl. ¶ 3. After Defendants agreed to produce most of the information, data and documents requested by Plaintiffs, the Parties requested that the Court stay the action. ECF No. 22.

Over the course of the next year, Defendants produced the requested

information, data and documents. Agmt. § II.2. To assist with their analysis, Plaintiffs' counsel hired an expert who calculated the amount of the pension contributions that Plaintiffs contended were owed and the amount of earnings lost from the missed pension contributions through June 2024. Barton Decl. ¶ 4. After Plaintiffs' expert completed those calculations and Plaintiffs' counsel analyzed those calculations, the Parties engaged in settlement negotiations and attended an in-person settlement conference with Magistrate Judge Bullard on August 22, 2025. Agmt. § II.3. After the August 2025 settlement conference and in response to Plaintiffs seeking data for military leaves after August 2025, Sun Country's counsel disclosed on September 8, 2025 that "due to an internal miscommunication at Sun Country, the company's payroll department has been calculating USERRA pension benefits differently than [it had] intended" to apply with respect to 401(k) employer contributions for pilots returning from qualified military leave. ECF No. 80 ("Barton Decl. re Class Cert") ¶ 21. As a result, Plaintiffs' counsel requested additional data and information, which Defendants produced throughout in late 2025 and until April 2026. *Id.* That data included pension contributions through the end of December 31, 2025. *Id.* Sun Country has represented that as of October 1, 2025, it implemented a revised methodology for calculating such contributions that is intended to comply with USERRA, ERISA, and the terms of the Plan. Agmt. § II.5. After Defendants produced that additional data and Plaintiffs' expert had

completed her calculations, the Parties continued to engage in settlement discussions. ECF No. 67 ¶ 2.

The Parties participated in another in-person settlement conference before Magistrate Judge Bullard on June 10, 2026. Agmt. § II.3. At the end of a 15-hour long settlement conference, the Parties reached and executed a written settlement, along with agreed forms of disclosures that Defendants would make to Class Members about their policies and calculations for pension contributions for military leaves. ECF No. 71; Barton Decl. ¶ 6.

## III. Overview of the Settlement Terms.

The settlement requires Defendants to provide both monetary and non-monetary relief. First, the Settlement requires Defendant to pay $1,550,000.00 into the Qualified Settlement Fund. Agmt. § VI.1. Second, Defendants must pay for all expenses to administer and distribute the settlement. *Id.* § VI.2. Third, Sun Country must provide disclosures regarding its policies and methodologies for pension contributions for military leave: (a) a written explanation of Sun Country's methodology for calculating 401(k) Plan contributions for pilots following periods of qualified military service, as applied on and after October 1, 2025, in the form attached as Appendix A, which will be provided along with the Class Notice and posted on Sun Country's intranet where other information about the 401(k) Plan is posted; and (b) during the Individualized Disclosure Period, Sun Country shall

provide each Sun Country pilot who returns from a period of qualified military service with an individualized written explanation of how the specific 401(k) Plan contribution for that particular period of military leave was calculated. *Id.* § VI.3.

Any award of attorneys' fees and expenses to Class Counsel and any service award to the Class Representatives will be paid out of the Settlement Fund in amounts to be determined by the Court. *Id.* § XI.1. After deduction of court-approved attorneys' fees and expenses awarded to Class Counsel, the Net Settlement Fund will be paid to the Class pursuant to a plan of allocation proposed by Class Counsel and approved by the Court. *Id.* §§ VIII.3-4. To the extent possible and consistent with IRS limits, those amounts will be paid into the Plan. *Id.* § VIII.4. The Plan of Allocation proposes that the Net Settlement Amount will be distributed among Class Members in proportion to their losses as calculated by Plaintiffs' expert. Barton Decl. Ex. B.

The Settlement Agreement also requires Defendants, at their expense, to hire an Independent Fiduciary to review and, if appropriate, approve the Settlement as consistent with Prohibited Transaction Exemption 2003-39, 68 Fed. Reg. 75632, as amended, 75 Fed. Reg. 33830 ("PTE 2003-39"). Agmt. § XIV.1.

In exchange for the consideration provided by Defendants in the Settlement, the Settlement provides that Plaintiffs and the Class will release Defendants (and their Releasees) from the claims asserted in the Complaint and all claims that could

have been asserted based on the same factual predicate, through and including December 31, 2025. *Id.* § XIII.2.

## ARGUMENT

"[A] strong public policy favors [settlement] agreements." *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1148 (8th Cir. 1999) (quotation omitted). This policy "is particularly strong in the class action context." *In re Zurn Pex Plumbing Prods. Liab. Litig.,* No. 08–MDL–1958 ADM/AJB, 2013 WL 716088, at *6 (D. Minn. Feb. 27, 2013) (quoting *White v. Nat'l Football League*, 822 F.Supp. 1389, 1416 (D. Minn. 1993)). The settlement of complex class actions avoid the uncertainty, delay, and expense of a trial and also reduces the burden on judicial resources, *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1178 (8th Cir. 1995). Approval of a class action settlement involves two steps: preliminary and final approval. *Martin v. Cargill, Inc.,* 295 F.R.D. 380, 383 (D. Minn. 2013). Deciding whether to grant preliminary approval requires considering whether the settlement "is fair, reasonable, and adequate to warrant providing notice of the Settlement to class members." *Randall v. GreatBanc Trust Co.,* No. 22-cv-2354 (LMP/DJF), 2025 WL 3513880, at *1 (D. Minn. Dec. 8, 2025); *Kloss v. Argent Trust Co.,* No. 23-301 (DWF/SGE), 2025 WL 2374070, at *1 (D. Minn. Aug. 15, 2025). The Eighth Circuit has advised that "[j]udges should not substitute their own judgment as to optimal settlement terms for the judgment of the litigants and their counsel."

*Petrovic*, 200 F.3d at 1148-1149 (quotation omitted). Rather, "courts should approach [class action settlements] with a presumption in their favor." *Id*. at 1148; *see In re Uponor, F1807 Plumbing Fittings Prods. Liab. Litig.,* 716 F.3d 1057, 1063 (8th Cir. 2013).

## I. The Settlement Should be Preliminarily Approved.

On preliminary approval, courts in this District typically evaluate whether the settlement will likely be granted final approval by assessing the factors under Rule 23(e)(2). *Randall,* 2025 WL 3513880, at *1; *Kloss,* 2025 WL 2374070, *1; *Becker v. Wells Fargo & Co.,* No. 0:20-cv-2016 (KMM/BRT), 2022 WL 1210948, at *1 (D. Minn. Apr. 25, 2022) (Menendez, J.). The factors identified in Rule 23(e)(2) are as follows:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
> (i) the costs, risks, and delay of trial and appeal;
> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
> (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). In addition to those in Rule 23(e)(2), courts in the Eighth Circuit "consider (1) the merits of the plaintiffs' case weighed against the terms of the settlement, (2) the defendant's financial condition, (3) the complexity and

expense of further litigation, and (4) the amount of opposition to the settlement." *Van Horn v. Trickey,* 840 F.2d 604, 607 (8th Cir. 1988). The Settlement meets each of the Rule 23(e)(2) factors and the additional factors considered in the Eighth Circuit.

### A. Plaintiffs and Counsel Have Adequately Represented the Class.

Plaintiffs have adequately represented the class when they have "actively participated in the conduct of this litigation." *Swinton v. SquareTrade, Inc.,* 454 F.Supp.3d 848, 876 (S.D. Iowa 2020). Additionally, courts evaluate whether plaintiffs and Class Counsel have "adequately represented the Settlement Class" by their work on the litigation "including their achievement of outstanding relief for the Settlement Class." *Kruger v. Lely N. Am., Inc.*, No. 0:20-cv-00629-KMM/DTS, 2023 WL 5665215, at *4 (D. Minn. Sept. 1, 2023). The best evidence of the adequacy of Plaintiffs and Plaintiffs' counsel is the relief obtained for the Class as it is the "rare class action settlement which provides complete relief for all alleged harms." *Messineo v. Ocwen Loan Servicing, LLC,* No. 15-cv-02076-BLF, 2017 WL 733219, at *9 (N.D. Cal. Feb. 24, 2017). Here, Plaintiffs have vigorously represented the Class as evidenced by their raising these issues with Sun Country well before filing suit and after there had been no satisfactory resolution, finding and hiring attorneys experienced in USERRA and ERISA class actions to bring this litigation. *See* Compl. ¶¶ 28, 74-76. Prior to filing this litigation, Plaintiffs

sought documents about the Plan and the relevant policies. *Id.* ¶ 77. Class Counsel then investigated the relevant facts and drafted a detailed Complaint. Barton Decl. ¶ 2. Once the Complaint was filed and Defendants expressed interest in discussing settlement, Class Counsel requested production of the relevant documents and data and hired an expert to assist them. *Id.* ¶ 3. Only once that analysis was complete did Class Counsel begin negotiating a settlement. *Id.* ¶ 4. The results achieved was a settlement that will provide, even after deduction of attorneys' fees and expenses, a full recovery to the Class. *Id.* ¶ 7. Thus, this factor favors approval.

**B. The Settlement Was Negotiated at Arm's Length.**

Rule 23(e)(2)(B) requires the settlement to be "negotiated at arm's length." Fed. R. Civ. P. Rule 23(b)(2)(B). A settlement is considered to have been reached at arms-length when it is the product of mediation with a neutral mediator. *Randall v. GreatBanc Trust Co.*, No. 22-cv-2354 (LMP/DJF), 2026 WL 1068035, at *5 (D. Minn. Apr. 20, 2026); *Barclay v. iFIT Health & Fitness, Inc.,* No. 19-cv-2970 (ECT/DJF), 2025 WL 3004039, at *13 (D. Minn. Oct. 27, 2025). Formal discovery is not necessary to settle class claims. *D'Amato v. Deutsche Bank,* 236 F.3d 78, 87 (2d Cir. 2001) (finding "although no formal discovery had taken place, the parties had engaged in an extensive exchange of documents and other information"); *In re Jiffy Lube Secs. Litig.,* 927 F.2d 155, 159 (4th Cir. 1991) (finding the "evidence obtained through informal discovery yielded sufficient undisputed facts to support"

settlement's approval despite no formal discovery).

Here, Plaintiffs agreed to stay the case and discuss settlement conditioned on Defendants providing certain documents and data about the Class that Plaintiffs' counsel considered necessary to evaluate the claims. Barton Decl. ¶ 3. The information that Defendants produced included data about the Sun Country pilots who took military leave, the amount of their compensation, the pension contributions, documents about the terms of the 401(k) Plan and Sun Country policies and information about the investment and investment performance in the 401(k) Plan. Agmt § II.2. After Plaintiffs received those documents, data and information, Plaintiffs' counsel hired an expert to assist them in quantifying the amount of pension contributions owed and the amount of earnings lost from the missed pension contributions. Barton Decl. ¶ 4.

After Plaintiffs' expert completed those calculations and Plaintiffs' counsel analyzed those calculations, the Parties engaged in settlement negotiations and attended an in-person settlement conference with Magistrate Judge Bullard on August 22, 2025. Agmt § II.3. After that settlement conference and certain disclosures by Sun Country, Plaintiffs requested and Defendants produced additional data and information. *Id.* § II.4; Barton Decl. ¶ 5. After Defendants produced that additional data and Plaintiffs' expert had completed her additional calculations, the Parties continued to engage in settlement discussions. ECF No. 67

¶ 2. The Parties participated in another in-person 15-hour settlement conference before Magistrate Judge Bullard on August 22, 2025. Amgt. § II.3. All three proposed class representatives attended both settlement conferences. George Decl. ¶ 9; Smith Decl. ¶ 10; Lehr Decl. ¶ 7. Those efforts resulted in a complete and fully executed settlement agreement. Barton Decl. ¶ 6. These circumstances demonstrate that this settlement agreement was reached at arms-length.

**C. The Relief Provided to the Class Is More Than Adequate.**

The Settlement requires Sun Country to pay $1,550,000 plus all settlement administration expenses and also to provide current and future substantive disclosures. Agmt §§ VI.1, VI.3. Based on the calculations by Plaintiffs' expert, the cash amount being paid by Sun Country, even after deduction of any attorneys' fees and expenses, will fully compensate the Class for the unpaid contributions plus lost investment returns on those unpaid contributions. Barton Decl. ¶ 4. Plaintiffs did not request prospective relief only because Sun Country began making pension contributions for military leave after this lawsuit was filed, has represented that as of October 1, 2025, it implemented a methodology for calculating such contributions that is intended to comply with USERRA, ERISA and the terms of the Plan, and produced data from October 1, 2025 to December 31, 2025 that allowed Plaintiffs' counsel and Plaintiffs' expert to assess those calculations. Barton Decl. ¶ 9 & Agmt. § II.5. In short, the relief that this Settlement provides to the Class is basically

everything that the Class could have achieved (other than liquidated damages) if this case had fully litigated and Plaintiffs fully succeed.

The Rule 23(e)(2)(C) factors also demonstrate the adequacy of the relief.

**1. The Costs, Risks and Delay Favor Approval.**

The costs, risks and delay is best illustrated by a USERRA case litigated by these Plaintiffs' counsel in which a class settlement was reached only after six years, an adverse summary judgment ruling and a successful appeal. *Clarkson v. Alaska Airlines, Inc.,* No. 2:19-CV-0005-TOR, 2025 WL 243024, at *4 (E.D. Wash. Jan. 15, 2025). As that court recognized, despite the favorable appellate ruling, Defendants had other arguments on liability and arguments that could have "substantially reduced the damages of the Class." *Id.* at 5. "At trial, a jury could have found in favor of Defendants or awarded much less in damages than obtained in this settlement." *Id.* "Had Plaintiff and the Class prevailed at trial, Defendants would almost certainly have appealed … and any recovery for the class would thus likely have taken many more years." *Id.* In that case, Plaintiffs' counsel expended over $244,000.00 in out of pocket expenses, most of which related to experts. *Id.* at *8. The same considerations of costs, risks and delay of trial and appeal apply in this case.

Despite what Plaintiffs' counsel consider to be a very strong case, Defendants have vigorously disputed both liability and the amount of any

recovery. *See* Agmt. § II.6. The strength of the plaintiffs' case "is not a simple mathematical exercise with definite outcomes; a 'high degree of precision cannot be expected in valuing a litigation.'" *Hashw v. Dep't Stores Nat'l Bank,* 182 F.Supp.3d 935, 943 (D. Minn. 2016) (quoting *Synfuel Techs., Inc. v. DHL Express (USA), Inc.,* 463 F.3d 646, 653 (7th Cir. 2006)). As a result "courts give great weight to and may rely on the judgment of experienced counsel in its evaluation of the merits of a class action settlement." *George v. Uponor Corp.,* No. 12–249 (ADM/JJK), 2015 WL 5255280, at *6 (D. Minn. Sept. 9, 2015) (internal marks omitted). By contrast, the proposed Settlement avoids "the risk and delay inherent in prosecuting this matter through trial and appeal" and "can deliver a real and substantial remedy" to Class Members now. *Cullan & Cullan LLC v. M-Qube, Inc.,* No. 8:13CV172, 2016 WL 5394684, at *7 (D. Neb. Sept. 27, 2016). Those disputes presented genuine risk to the Class and confirm that the Settlement reflects a reasonable compromise of contested claims.

Of the amount that Plaintiffs' expert calculated as losses, approximately $350,000 was attributable to lost investment returns. Barton Decl. ¶ 8. This provided a greater loss than prejudgment interest afforded under USERRA and was relief for and therefore depended on the ERISA claims. *Id.* Defendants would have likely disputed Plaintiffs' calculation of lost investment returns, which were measured using the best-performing Plan investment option, which Plaintiffs

contended was consistent with *Tussey v. ABB, Inc*., 850 F.3d 951, 959 (8th Cir. 2017). As this dispute illustrates, ERISA claims are complex, costly and uncertain. *Krueger v. Ameriprise Fin., Inc.,* No. 11–CV–02781 (SRN/JSM), 2015 WL 4246879, at *1 (D. Minn. July 13, 2015). There are numerous examples of trials of ERISA fiduciary breach cases where defendants prevailed. *Bowers v. Russell*, No. 22-cv-10457-PBS, 2026 WL 1506413 (D. Mass. May 29, 2026) (finding in favor of defendants after 12-day bench trial); *Walsh v. Bowers,* 561 F.Supp.3d 973, 977 (D. Haw. 2021) (finding in favor of defendants after trial); *Reetz v. Lowe's Cos., Inc.,* No. 5:18-CV-00075, 2021 WL 4771535, at *1 (W.D.N.C. Oct. 12, 2021) (finding for defendant after trial). And even when plaintiffs proved that defendants breached their fiduciary duties, courts sometimes find those breaches resulted in no harm or loss to the participants. *DeFazio v. Hollister, Inc.,* 854 F.Supp.2d 770, 816 (E.D. Cal. 2012) (finding after trial that ESOP "fiduciaries' breaches of their duties did not cause a material harm"), *aff'd*, 612 Fed. Appx. 439 (9th Cir. 2015). Had Defendants' arguments succeeded, the Class' recovery could have been lower than the Settlement provides. Even if Plaintiffs succeeded through trial, they faced risk on appeal. *See Wit v. United Behav. Health*, 79 F.4th 1068 (9th Cir. 2023) (reversing trial decision for ERISA class after ten-day bench trial).

Likewise, any award of liquidated damages for a willful violation of USERRA would have depended on evidence of willfulness prior to 2022 when

Plaintiff Smith notified Sun Country of its failure to make contributions. Compl. ¶¶ 74-75. Defendants deny any liability, including any willful violation, and dispute the amount of losses. Agmt. § II.6. Plaintiffs may have lost that issue on summary judgment or trial. *E.g. Scanlan v. Am. Airlines Grp., Inc.,* No. 18-4040, 2024 WL 3993207, at *4 (E.D. Pa. Aug. 29, 2024) (granting summary judgment to defendants on liquidated damages).

Finally, Allegiant Travel Company's recent acquisition of Sun Country's (effective May 13, 2026) would likely have caused difficulties as airlines began to consolidate administrative and human resources operations, and critical witnesses from Sun Country leave the company.

Absent settlement, the Parties would expend significant time and resources on further costly expert discovery, dispositive motions, trial, and potential appeals. Should Plaintiffs' claims survive summary judgment, a trial in this case would likely take a week or more and would require testimony from numerous fact and expert witnesses. This factor also weighs strongly in favor of approval.

### 2. The Method of Distributing Relief to the Class Will Be Highly Effective.

When a settlement "ensure[s] that all Class Members will receive payment" without being "required to submit a claim form to receive payment" the method of distribution is "highly effective." *Bennett v. Schnader Harrison Segal & Lewis LLP,* No. 2:24-cv-00592-JMY, 2026 WL 202548, at *4 (E.D. Pa. Jan. 22, 2026);

*Davis v. United Bank Corp. Ret. Plan Comm.,* No. 5:24-CV-328-MTT, 2025 WL 3142143, at *7 (M.D. Ga. Nov. 7, 2025) (finding payment into ERISA plan effective); *Anderson v. City and Cnty. of San Francisco*, No. 4:20-cv-01149-DMR, 2025 WL 3785958, at *5 (N.D. Cal. Dec. 18, 2025) (finding automatic payment by check in USERRA settlement was an effective means of distribution). In settlements involving ERISA-covered plans, the payment of the proceeds into the plan – to the extent consistent with IRS rules – not only "ensures that all class members will receive financial compensation" but "preserve[s] the tax-advantaged character of the Class Members' recovery." *Davis,* 2025 WL 3142143, at *7; *see Bennett*, 2026 WL 202548, at *4 (finding that payment of proceeds for some class members into a special trust and others by check would be highly effective); *Glynn v. Me. Oxy-Acetylene Supply Co.,* No. 2:19-cv-00176-NT, 2022 WL 17617138, at *4 (D. Me. Dec. 13, 2022) (finding that issuing settlement checks to participants in retirement plan was effective means of distributing relief).

For Class Members with current accounts in the Plan, the Settlement provides that a Class Member's share of the settlement will be deposited into the Plan, unless some portion cannot be contributed or credited under the Plan, in which case the amount will be paid by check or electronic transfer. Agmt. § VIII.4. For Class Members without current accounts in the Plan, their share will be paid by

check or electronic transfers. *Id.* As such a distribution will be highly effective, this factor weighs in favor of approval.

**3. The Terms Relating to Attorneys' Fees Are Reasonable.**

Rule 23(e) assesses whether attorneys' fees impact the overall fairness of the Settlement; the ultimate amount of any fees awarded is subject to a separate analysis under 23(h). Fed. R. Civ. P. Rule 23(e)(2)(C)(iii). Where "the Class is receiving nearly everything that they could have received had Plaintiffs been successful at trial, there can be no suggestion that Class Counsel traded the Class's interests for their own." *Anderson,* 2025 WL 3785958, at *5. Likewise, when the amount of fees will be determined by the court and the settlement is "not conditioned on any amount of fees and expense being paid to Class Counsel," that favors approval. *Id.*; *Davis*, 2025 WL 3142143, at *7. In evaluating this factor on preliminary approval, courts often defer a decision about the appropriate amount of fees until final approval. *Davis*, 2025 WL 3142143, at *7 (citing cases).

A lawyer who recovers a common fund for a class is entitled to a reasonable attorney's fee from the fund. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). Courts in the Eighth Circuit "have frequently awarded attorney fees between 25 and 36 percent of a common fund in class actions." *Caligiuri v. Symantec Corp.,* 855 F.3d 860, 866 (8th Cir. 2017). This Court recently approved a request for attorneys' fees in the amount of one-third of a class settlement. *Stotesbery v. Ayvaz Pizza, LLC*,

No. 0:22-cv-01622-KMM-DLM, 2026 WL 412643, at *1 (D. Minn. Feb. 13, 2026) (Menendez, J.) (awarding $333,333.33 plus $35,000 in expenses); *Krueger,* 2015 WL 4246879, at *2 (awarding one-third in an ERISA case involving a retirement plan). Here, the Settlement Agreement does not specify any percentage or amount of attorneys' fees that Class Counsel will seek from the Settlement Fund and leaves the amount up to the Court. Agmt. ¶ XI.1. Any decision on attorneys' fees is not a condition to this Settlement Agreement. *Id.* ¶ XI.4. Here, Class Counsel do not intend to request more than one-third of the fund. Barton Decl. ¶ 10. Thus, the terms related to attorneys' fees are reasonable.

**4. The Separate Agreement is Appropriate.**

Rule 23(e)(3) requires the parties to "file a statement identifying any agreement made in connection with the proposal." Fed. R. Civ. P. 23(e)(3). "[T]he purpose of Rule 23(e)(3) is to require disclosure to a class of agreements that 'might have affected the interests of class members by altering what they may be receiving or foregoing.'" *Mandalevy v. Bofl Holding, Inc.*, No. 3:17-cv-667-GPC-MSB, 2022 WL 4474263, at *9 (S.D. Ca. Sept. 26, 2022) (citing *Manual for Complex Litigation (Fourth)* § 21.631 at 319 (2004)). Here, the only one is the Supplemental Agreement that sets forth the provision that allows Defendants to terminate the Settlement only if the Court certifies the class under Rule 23(b)(3) and if enough class members opt out.

"This type of provision is known as a 'blow-up'" and is "common and guard against the possibility that a sufficient number of class members opt out of a class action settlement such that the Defendant's potential future liability is not reduced in a way that renders the settlement worthwhile." *Davis,* 2025 WL 3142143, at *8; *Probst v. Eli Lilly and Co.*, No. 1:22-cv-01986-MKK-SEB, 2023 WL 11051728, at *4 (S.D. Ind. Nov. 21, 2023) ("Such provisions are commonplace in class action settlements and do not prevent a barrier to approval."); 2 *McLaughlin on Class Actions* § 6:22 (21st ed.) (explaining such agreements are common and usually filed under seal). As such agreements are common and proper, this agreement is appropriate.

**D. The Proposed Settlement Treats Class Members Equitably.**

A settlement treats class members equitably relative to each other when it "takes appropriate account of differences among their claims." 2018 Advisory Committee Note to Rule 23. "[T]he text of the [Rule 23(e)(2)(D)] requires equity, not equality, and treating class members equitably does not necessarily mean treating them all equally." *In re Blue Cross Blue Shield Antitrust Litig.,* 85 F.4th 1070, 1093 (11th Cir. 2023) (rejecting objector's argument). "There is no requirement that all class members in a settlement be treated *equally*." *Swinton v. SquareTrade, Inc.,* 454 F.Supp.3d 848, 875 (S.D. Iowa 2020) (finding settlement in which class members would receive different benefits under the settlement was

still equitable); *Holmes v. Cont'l Can Co.*, 706 F.2d 1144, 1148 (11th Cir. 1983) ("[T]here is no rule that settlements benefit all class members equally" so long as any differences are "rationally based on legitimate considerations."). This requirement is satisfied where "[a]ll Class members receive the same treatment under the Settlement but will receive different distributions of the Settlement proceeds based on their damages or benefits." *Anderson*, 2025 WL 3785958, at *5 *Davis*, 2025 WL 3142143, at *8. Here, the Settlement itself does not differentiate between Class Members. Instead, the Settlement Agreement itself merely provides that the Net Settlement Fund will be allocated and distributed to Class Members based on a court-approved plan of allocation. Agmt. § VIII.4. And the Plan of Allocation proposed by Class Counsel provides for allocating settlement funds based on the extent of Class Members losses. *Infra* II.

**E. Other Factors Do Not Weigh Against Approval.**

The Eighth Circuit factors not subsumed in the Rule 23(e) factors —namely "defendant's financial condition" and "amount of opposition to the settlement"—do not weigh against preliminary approval.[2] While Sun Country appears to have the financial ability to pay a greater amount, the fact that a defendant could "pay more than it is paying in this settlement . . . standing alone, does not render the

---

[2] Consideration of any opposition to the Settlement is best addressed on Final Approval after Class Members have received notice of the Settlement and have had an opportunity to object.

settlement inadequate." *Petrovic*, 200 F.3d at 1152. More importantly, the monetary recovery for each class member will equal or exceed their losses inclusive for lost returns. *Supra* I.C. Thus, these factors do not weigh against preliminary approval.

## II. The Proposed Plan of Allocation Should be Approved.

A plan of allocation of a class settlement need only propose a "fund distribution [that] is fair and reasonable as to all participants." *Sullivan v. DB Inv., Inc.,* 667 F.3d 273, 326 (3rd Cir. 2011). "A plan of allocation 'need only have a reasonable, rational basis, particularly if recommended by 'experienced and competent' class counsel.'" *Walkinshaw v. CommonSpirit Health,* No. 4:19CV3012, 2022 WL 5255287, at *6 (D. Neb. Oct. 6, 2022). A plan of allocation is fair, reasonable and adequate where it proposes that "class members will receive their proportional share of alleged losses arising from" defendant's violations. *Randall*, 2026 WL 1068035, at *5 (approving plan of allocation in retirement plan case); *Custom Hair Designs by Sandy, LLC v. Cent. Payment Co., LLC*, No. 8:17CV310, 2022 WL 704063, at *1 (D. Neb. Mar. 9, 2022) (approving allocation for which payments "correspond[ed] to [class members'] pro rata share of their alleged individual damages, as calculated by Plaintiffs' expert"); *Zilhaver v. UnitedHealth Grp., Inc.,* 646 F.Supp.2d 1075, 1080 (D. Minn. 2009) (approving allocation plan in retirement plan case that would distribute settlement in

proportion to their calculated losses).

The proposed Plan of Allocation uses this approach. It proposes to allocate the settlement proceeds among Class Members based on the contributions that should have been made as calculated by Plaintiffs' expert and any investment losses as calculated by Plaintiffs' expert compared to any contributions that were made. Barton Decl. Ex. B § 5. To the extent that Net Settlement Fund exceeds the amount of losses calculated by Plaintiffs' expert, that excess will be distributed to Class Members who do not have a current balance in the Plan and whose settlement payments will be distributed outside the Plan to offset any resulting adverse tax consequences. *Id.* § 6.

## III. The Class Notice & Plan of Notice Should be Approved.

The Court must ensure that notice is provided in a reasonable manner to all class members who will be bound by the settlement. *See* Fed. R. Civ. P. 23(e)(1). Classes under Rule 23(b)(1) or (2) should receive "appropriate notice" while opt-out (b)(3) classes must receive the "best notice practicable." Fed. R. Civ. P. 23(c)(2)(B). "[B]est notice practicable" means "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). Notice of a class action settlement "need not be a complete source of information about a settlement agreement." *In re UnitedHealth Grp. Inc. S'holder Derivative Litig.*, 631 F.3d 913, 918 (8th Cir. 2011). A class

notice is adequate if it is "reasonably calculated, under the circumstances, to apprise interested Parties of the pendency of the action and afford them an opportunity to present their objections." *Petrovic,* 200 F.3d at 1153 (quoting *Mullane v. Cent. Hanover Bank and Trust Co.*, 339 U.S. 306, 314 (1950)). The Class Notice proposed here meets this standard.

First, where "the names and email and/or mailing addresses of the Class Members are known," then "notice to the Class by email or, if it is not known or available, by first class mail is appropriate." *Walkinshaw*, 2022 WL 5255287, at *5. As the Class members are current or former Plan participants, the Plan Administrator or recordkeeper maintains reliable records for Class members. *See Baird v. BlackRock Inst. Trust Co., N.A.*, No. 17-cv-01892-HSG, 2021 WL 5991060, at *4 (N.D. Cal. July 12, 2021). Sun Country is required to provide that information. Agmt. § V.3. The Settlement Administrator will also maintain a website that will provide information about the case, the settlement and the Class Notice. Agmt. § III.5. Thus, the method of notice is appropriate and sufficient.

Second, the Class Notice will provide appropriate information about the Settlement and the rights of the Settlement Class including (1) the nature of the action; (2) the definition of the class certified; (3) the class claims, issues, and defenses; (4) the benefits to be provided in the settlement and how to receive those benefits (that a class member may enter an appearance through an attorney if the

member so desires; (5) their options and rights, including how to object or submit challenges; (6) the time, place and what will be decided at the final haring; and (7) the binding effect of a class judgment on members under Rule 23(c)(3). *Compare Walkinshaw,* 2022 WL 5255287, at *5 (citing Rule 23(c)(2)(B) and *Manual for Complex Litigation* § 21.312 and approving class settlement notice) with Barton Decl. Ex. C.

## IV. The Court Should Appoint a Settlement Administrator.

The Settlement provides that a Settlement Administrator will be appointed by the Court. Agmt. § X. The Settlement Administrator will disseminate the Class Notice, maintain a settlement website and process and make distributions, and perform the other duties set forth in Section X of the Settlement Agreement. Defendants will pay the Settlement Administrator's fees and costs separately, outside of and without reduction to the Settlement Fund. Agmt. § VI. Angeion Group, LLC has experience administering employee-benefit and class-action settlements, including disseminating class notice and distributing settlement proceeds through defined contribution plans. Barton Decl. at Ex. D. Class Counsel has utilized Angeion previously to administer a class settlement (although not one involving employee benefits) and was pleased with its performance. *Id.* ¶ 12. The Parties selected Angeion after receiving bids from 14 potential administrators and jointly recommend that Angeion be appointed as Settlement Administrator.

## V. The Court Should Establish Deadlines for the Settlement.

"Courts have consistently held that 30 to 60 days between the mailing (or other dissemination) of class notice and the last date to object or opt out, coupled with a few more weeks between the close of objections and the settlement hearing, affords class members an adequate opportunity to evaluate and, if desired, take action concerning a proposed settlement." *Greco v. Ginn Dev. Co., LLC*, 635 Fed. Appx. 628, 634 (11th Cir. 2015) (unpublished) (quoting 2 *McLaughlin on Class Actions* § 6:18 (11th ed.)). Here, Plaintiffs' counsel recommends an objection period of 60 days following distribution of class notice and the other deadlines set forth in the motion.

The Class Action Fairness Act ("CAFA") provides that final approval cannot be issued "earlier than 90 days after … the appropriate Federal official and the appropriate State official are served with the notice required" by CAFA. 28 U.S.C. § 1715(d). CAFA requires defendants to serve those notices within "10 days after a proposed settlement of a class action is filed in court." 28 U.S.C. § 1715(b). Assuming that Defendants serve the CAFA notices by August 10, 2026, a final approval order may be entered on or after November 9, 2026.

The proposed schedule is designed to have final approval occur before the Sun Country, Inc. 401(k) Profit Sharing Plan merges into The Allegiant 401(k) Retirement Plan. *See* Agmt. §§ III.1 & 39. Setting final approval before that merger

allows the settlement distributions to made into the Plan and avoids potential administrative complexity and delay that may result from having payments made into a different plan. *See id.* § VIII.4.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Preliminary Approval of the Settlement should be granted.

Dated: July 30, 2026

Respectfully submitted,

R. Joseph Barton (*pro hac vice*)
The Barton Firm LLP
1633 Connecticut Avenue NW
Suite 200
Washington, DC 20009
(202) 734-7046
jbarton@thebartonfirm.com

Thomas G. Jarrard (*pro hac vice*)
Law Office of Thomas G. Jarrard, PLLC
1020 N. Washington Street
Spokane, WA 99201
(425) 239-7290
tjarrard@att.net

Kent M. Williams, Esq.
Siri & Glimstad LLP
745 Fifth Avenue, Suite 500
New York, NY 10151
(772) 783-8436
kent.williams@sirillp.com

*Attorneys for Plaintiffs*